NASHUA RIVER PAPER COMPANY *vs.* EDWIN P. LINDSAY.

SAME *vs.* SAME.

Suffolk.    March 11, 1924. — May 27, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & CARROLL, JJ.

*Sale,* Warranty: what constitutes breach, notice of breach to vendor.
*Evidence,* Presumptions and burden of proof.   *Practice, Civil,* Auditor's
report.

An action of contract for breach of warranty of the quality of goods sold
was heard by a judge without a jury by agreement of the parties upon
a report by an auditor and evidence which was before the auditor.
The judge adopted findings by the auditor, supported by evidence, as
to the nature of the warranty and as to its breach.   The defendant
alleged exceptions to such action by the judge.   *Held,* that the excep-
tions must be overruled.

The question, at the hearing of the action above described, whether the
plaintiff had waived the breach of warranty, was one of fact, the burden
of proving which was on the defendant; and therefore an exception to
a finding by the auditor, supported by the evidence and sustained by
the judge, that such waiver had not been proved must be overruled.

G. L. c. 106, § 38, does not attempt to define the kind of " notice " of breach of warranty of quality that must be given by the purchaser of merchandise to the seller within a reasonable time in order to hold the seller liable, nor do the decisions of this court formulate any definite standard therefor.

Without attempting to lay down a general rule of construction as to the substance of the notice of the breach of warranty which the buyer of merchandise must give, after acceptance of the goods, in order to hold the seller liable, it seems clear that it must refer to particular sales, so far as that is practicable; that it must at least fairly advise the seller of the alleged defects, and that it must be such as to repel the inference of waiver. Although it need not necessarily take the form of an express claim for damages or threat of such, it ought to be reasonably inferable therefrom that the buyer is asserting a violation of his legal rights. Per DeCourcy, J.

Rulings of law by a judge, hearing without a jury the action above described, that none of several complaints made by the purchaser to the seller constituted sufficient notice under G. L. c. 106, § 38, of breach of warranty of quality, were *held* to be erroneous, the question of the sufficiency of the complaint as notice being one of fact and not of law.

CONTRACT, with a declaration in three counts, only one of which, the first count, alleging a breach of contract described in the opinion, now is material. Writ dated March 20, 1919.

The action previously was before this court after a finding for the defendant by *McLaughlin*, J., who had heard the action without a jury, when, in a decision reported in 242 Mass. 206, exceptions by the plaintiff were sustained.

The action was heard a second time by *Weed*, J., without a jury. The defendant asked for the following rulings:

" 9. This contemporaneous interpretation put upon the contract by the parties shows unequivocally the plaintiff to have bought and accepted pulp of the quality equal to the making of paper commercially acceptable as No. 1 Kraft, and that the same was bought and paid for in the general market as such throughout the entire series of contracts with the full acquiescence of the plaintiff in this classification as to quality put upon it in all of which the Mullen test played no part.

" 10. In other words, throughout down to and including the last completed transaction in the series of contracts it was the agreement of the parties to each contract that as to warranty the standard of quality was that of the preceding

one, namely, the quality that had been acceptably sold in the market as No. 1 Kraft.

" 11. It is submitted that upon all the evidence the only warranty was that the pulp was of the quality equal to making paper commercially acceptable as No. 1 Kraft, and in this there was no breach. It was all sold and paid for as such."

The trial judge refused to grant the rulings. He found that " Each shipment was a sale "; that the warranty of quality by the defendant was that all the sulphate pulp which the defendant sold to the plaintiff was number one grade of pulp and was suitable for use in the manufacture of number one grade paper; that the warranty had been broken and that the plaintiff had not waived and excused " the failure or failures of the defendant to deliver to the plaintiff pulp of the first quality and fit for the purpose of making No. 1 Kraft paper "; but that, however, as to all but certain pulp known as " the Van Buren pulp and some eleven carloads shipped from the Howland or Deerfield mills," the plaintiff had failed to give the notice required by G. L. c. 106, § 38. He found for the plaintiff in the sum of $52,300.80 for breach of warranty of quality as to the Van Buren pulp and the eleven carloads shipped from the Howland and Deerfield mills. Both the plaintiff and the defendant alleged exceptions.

*R. G. Dodge,* (*R. S. Wilkins* with him,) for the plaintiff.
*T. W. Proctor,* for the defendant.

DeCourcy, J. This is an action to recover damages for breach of warranty of quality in the sale of Kraft pulp, delivered by the defendant to the plaintiff from June, 1917, to January, 1919. After the earlier decision of this court (reported in 242 Mass. 206), it was retried in the Superior Court by a judge sitting without a jury. The evidence before him, by agreement of parties, consisted of the report of the auditor, and the testimony and exhibits which were in evidence before the auditor. The plaintiff waived counts 2 and 3. The judge found for the plaintiff in the sum of $40,860 and interest. The case is now before us on exceptions taken by both parties.

The facts are stated at length in the earlier decision, and only those essential to the questions before us need be repeated here. The trial judge adopted the findings of the auditor, that the defendant expressly warranted all sulphate pulp which he sold to the plaintiff to be No. 1 Kraft pulp, and suitable for use in the manufacture of No. 1 Kraft paper; and that in fact more than ninety per cent of it was not No. 1 Kraft pulp and was not suitable for use in the manufacture of No. 1 Kraft paper.

We consider first the exceptions taken by the defendant.

The first, which was to the ruling that the defendant is liable, depends upon the disposition of his requests numbered 9, 10 and 11. These are, in substance, that the only warranty of the defendant was that the pulp supplied by him to the plaintiff should be of a quality equal to the making of paper commercially acceptable as No. 1 Kraft, and that there was no breach of such warranty. As to these it is enough to say that the finding of the auditor, later adopted by the trial judge, as to the construction of the warranty, was amply supported by the evidence. Indeed at the trial the defendant substantially admitted that the warranty was that all sulphate pulp which he sold was No. 1 Kraft pulp. The fact, that as selling agent for the paper, he was able to obtain the prices he did, is explained by the fact that during the war there was such an unusual demand for Kraft paper that even the poorer quality commanded a higher price than usual. The third exception was to the refusal of the judge to rule that on the evidence the plaintiff had waived any failure of the defendant to deliver pulp of the warranted quality. The question of waiver was one of fact, and the burden of proving it was on the defendant. It could not properly be ruled as matter of law that he had established that defence. *Nashua River Paper Co.* v. *Lindsay*, 242 Mass. 206, 209. See *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133, 136. The defendant's remaining exception is to the judge's ruling that sufficient notice under the sales act was given by the plaintiff of the alleged breaches of warranty with respect to the pulp shipped from the Van Buren Mills and eleven carloads shipped from the Deerfield and

Howland mills. These we shall consider in connection with the plaintiff's exceptions relating to the same subject of notice.

The plaintiff's exceptions are four in number. The fourth is to the alleged ruling of the judge that " Each shipment [of pulp] was a sale." This, however, was not a ruling, but a finding of fact, as shown by the language and its context. The finding must stand, as it is supported by the evidence. The other exceptions of the plaintiff are to the rulings of the trial judge, in substance that the plaintiff failed to give to the defendant notice of the breach of his warranty of quality, within the meaning of the sales act, with respect to the pulp other than the Van Buren pulp and eleven carload lots already referred to. In common with the defendant's exception No. 2, they deal with the subject of notice under the act, and will now be considered in connection therewith.

The material section of the sales act (G. L. c. 106, § 38) is as follows: " In the absence of an express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

- The statute does not attempt to define the kind of " notice " of the breach of warranty that must be given within a reasonable time, in order to hold the seller liable. Nor do we find any definite standard formulated in our cases under the act. In *Borden* v. *Fine*, 212 Mass. 425, *Gascoigne* v. *Carey Brick Co.* 217 Mass. 302, *M & M Co. Inc.* v. *Hood Rubber Co.* 226 Mass. 181, and *Lincoln* v. *Croll*, 248 Mass. 232, the subsidiary fact of a proper notice was involved, but is not expressly referred to in the opinions. In *Trimount Lumber Co.* v. *Murdough*, 229 Mass. 254, the charge of the trial judge was held unexceptionable. In that charge it was stated in substance that the buyer must let the seller " know of any claim you are going to make against him "

within a reasonable time; and that the jury must determine whether, in case there was a breach of contract through lack of quantity or quality, known to the buyer, " he made a claim within a reasonable time." In *Nashua River Paper Co.* v. *Lindsay*, 242 Mass. 206, 210, occurs the statement, " Complaints as to the quality of the pulp might have been found a sufficient notice of breach of warranty." Cases cited from other States contain little discussion of this question of notice. *Hayes* v. *Kluge*, 86 N. J. L. 657. *Bass* v. *Bellofatto*, 96 N. J. L. 320. *Henderson Tire & Rubber Co.* v. *Wilson & Son, Inc.* 235 N. Y. 489. *Rittenhouse, Winterson Auto. Co.* v. *Kissner*, 129 Md. 102. Without attempting to lay down a general rule of construction as to the substance of the notice of the breach of warranty which the buyer must give, after acceptance of the goods, in order to hold the seller liable, it seems clear that it must refer to particular sales, so far as that is practicable; that it must at least fairly advise the seller of the alleged defects, and that it must be such as to repel the inference of waiver. Although it need not necessarily take the form of an express claim for damages or threat of such, it ought to be reasonably inferable therefrom that the buyer is asserting a violation of his legal rights.

In view of the judge's finding that each shipment was a sale, the exceptions of the defendant render it necessary to consider whether a proper notice was given of the breaches of warranty in the shipments of Van Buren pulp and said eleven carloads of Deerfield and Howland pulp. He further finds that the complaints with respect to these " did not in terms or in substance state that the plaintiff intended to claim damages for the defective quality of the pulp or to charge him with liability therefor." Apparently the only letter which specifically refers to a particular carload of Van Buren pulp is that of August 16, 1918, (exhibit 50). Nevertheless there was much evidence of written and oral complaints about the dirt in the Van Buren pulp, tending to show that the whole run of this pulp was bad. The trial, especially before the auditor, seems to have proceeded on the theory that it was not individual sales that were being dealt with, but that the matter to which the notices should

relate was the general run of the pulp.   Even assuming that
the judge might have found as matter of fact that the
notices relating to the Van Buren pulp were sufficient in sub-
stance, we do not think he was justified in ruling as matter
of law that they all were sufficient.   It might well be found
that some of them were intended merely to keep the de-
fendant advised of the progress of the work, rather than to
assert a claim that the pulp was defective.   The same is
true as to said eleven carloads.   For instance, the letter of
September 28, 1917, (exhibit 29), after referring to two cars
just received, says: " Though perhaps it is not serious
enough to take any notice of, we understand you want us to
keep you posted exactly how it runs."   And in the letter of
November 21, 1918, (exhibit 63), relating to one of said
eleven cars shipped from the Deerfield Pulp Company, the
plaintiff writes, " Sample looks pretty shivey.   Would like
your opinion."   Five of these notices do not refer to any
identified car; although, in view of the defendant's knowl-
edge, it probably could be found as a fact that the notices
were specific enough.

As to the ruling that the plaintiff failed to give notice of
the breaches of warranty with respect to the rest of the
Deerfield and Howland pulp: On this question also it seems
to us that an issue of fact was presented.   The judge found
that " the plaintiff did not prior to January, 1919, know nor
ought it to have known," (except with reference to the Van
Buren and eleven carloads above mentioned,) " that its
difficulties in the manufacture of Kraft paper were due to
the poor quality of the pulp sold by the defendant arising
from a breach of his warranty of its quality."   As the
warranty involved the suitability of the pulp to make No.
1 Kraft paper, the breach related considerably to the quality
of the product.   In determining the timeliness and the suffi-
ciency of the notices, it must also be borne in mind that
the defendant not only maintained a laboratory in which
all the pulp was examined, but purported to understand
the manufacture of Kraft paper, which was a new line to
the plaintiff; he kept in constant touch with the plaintiff's
mill and officers, and for a long time represented to them

that the troubles with the paper were not due to the pulp but to errors in manufacturing. Whether, in the circumstances, such notices as were given were within a reasonable time " after the buyer knows, or ought to know of such breach," was an issue of fact rather than of law. As to the substantive sufficiency of the notices: there was considerable evidence which could be connected with specific sales in the record when considered in the light of what the defendant already knew about the quality of the pulp, and of prior communications between the parties respecting it: For instance, the letters of July 16, and November 10, 1917, March 29, and April 19, 1918, December 12 and December 19, 1918, and January 27, 1919, might well be understood by the parties as referring to specific sales of pulp. Again, the report of the auditor shows that many complaints were made orally by the plaintiff's officers, apparently applying to all the shipments. Such is his statement, " From the beginning the officers of the plaintiff frequently complained to the defendant of the character of the pulp, pointing out numerous instances where it was found soft, fuzzy, lacking in strength of fibre, overcooked, or containing shives or uncooked splinters of wood." In addition, there was testimony of the plaintiff's president and others as to frequent complaints made to the defendant. Without undertaking to determine the sufficiency of any particular complaints, it is enough to say that it was error to rule as matter of law that none of them constituted a sufficient notice to the defendant of a breach of his warranty of quality.

The result is that the exceptions of both the plaintiff and the defendant must be sustained.

*So ordered.*