TRUSLOW AND FULLE, INC. *vs.* THE DIAMOND BOTTLING CORPORATION.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 11th—decided October 3d, 1930.

*Philip Pond* and *Albert McC. Mathewson,* with whom, on the brief, was *Joseph B. Morse,* for the appellant (plaintiff).

*William E. Thoms,* for the appellee (defendant).

MALTBIE, J. The plaintiff in its complaint alleged that the defendant was indebted to it for certain merchandise, part of which had been delivered and the remainder of which was being held subject to the defendant's orders. The defendant admitted that part of the merchandise had been delivered, but denied the rest of the complaint. It then pleaded a special defense the gist of which was that the merchandise consisted of a large quantity of crown caps to be used in its business of bottling and selling beverages, that the caps were defective and wholly useless for the purpose intended, that it had had to discontinue their use, and that they were worthless. It also pleaded a counterclaim in which it was alleged that the plaintiff had sold and delivered to it a great quantity of caps in addition to those for which a recovery was sought in the complaint, under an express representation that they were extra choice quality crowns and suitable for the defendant's business; that they were in fact defective and useless in that they failed effectively to seal the bottles on which they were used; that the defendant, on discovering their defective quality, informed the plaintiff and received its assurances that they would cause no further trouble; that later certain changes in design were made, with a like assurance; that the defendant relied upon the advice of the plaintiff and used some of those made in the new way; but that the trouble in-

creased until finally the defendant ceased to use caps
made by the plaintiff; and the defendant claimed
special damages because it had been compelled to re-
place defective shipments it had made and to destroy
other goods, and also because of a loss of business re-
sulting from the poor quality of the goods it shipped,
all due to defects in the caps. The trial court gave
judgment for the defendant both upon the complaint
and the counterclaim and the plaintiff has appealed.

All the evidence has been printed and the plaintiff
seeks a great many changes in the finding, but none of
these are properly before us. The first three of its
claims of error seek to substitute for almost the whole
of the finding its own draft-finding or to add to the
finding substantially all the paragraphs of that draft-
finding. Not even in its brief does it point out under
these claims of error any specific fault it claims in the
finding as made or direct our attention to relevant por-
tions of the evidence. Such an attempt to secure
alterations in a finding in bulk cannot be considered
by us. *Norwalk Tire & Rubber Co.* v. *Manufacturers'
Casualty Ins. Co.,* 109 Conn. 609, 610, 145 Atl. 44. The
claims of error seeking more detailed corrections in the
finding, contrary to our practice, do not assign the rea-
sons upon the basis of which they are sought. *Siller*
v. *Philip,* 107 Conn. 612, 614, 141 Atl. 872; *Prendergast*
v. *Drew,* 103 Conn. 88, 90, 130 Atl. 75. But aside from
these faults of practice, there is no respect in which we
could make any substantial changes in the finding
which would be of consequence as regards the decisive
issues in the case. Thus the attack made upon certain
statements in the finding that one England, a sales-
man for the plaintiff, had authority when securing the
first order for the caps to make representations as to
their quality, and when trouble with the caps devel-
oped, to promise the adjustment of damages suffered

raised issues of little if any materiality, because the judgment upon the counterclaim was based, and the defendant now founds its claims, only upon an implied warranty, not upon an express one nor upon any promise of reinbursement for losses. That England did have authority to receive complaints of trouble caused to the defendant by the defective condition of the caps and to advise changes in design would be a proper inference from his position as salesman and the actions of the plaintiff following upon such complaints and the discussions he had with the defendant's representatives. In the finding that an inspection of the caps upon receipt would not disclose defects in them, the court is of course referring to such reasonable inspection as could be given upon receipt of such goods, not that which would be made in an attempt to find the cause of trouble after it had developed from the actual use of the caps nor one which the court might well regard as not reasonably adapted to the orderly conduct of the defendant's business, such as immersing each bottle upon which a cap was used in hot water before shipping it. So when the court found that the citric acid used in the defendant's products did not cause the bottles to leak, it evidently meant that, had the caps been proper ones, the leakage would not have occurred merely because of the contents of the bottles.

In so far as the right of the plaintiff to recover judgment for the caps included in the complaint is concerned, the defendant in its answer expressly admits the delivery to it of at least a part of them. It has not pleaded or proved that it ever returned or offered to return any of them or in any way intimated to the plaintiff that it had rejected them, but the plain inference from the finding is that it retained them from the time of the last delivery in August, 1926, until the trial of the case in November, 1929. By the provisions of

the Sales Act, a buyer is deemed to have accepted goods when, after the lapse of a reasonable time, he retains them without intimating to the seller that he has rejected them. General Statutes, § 4668. It follows that there was an acceptance of the caps delivered as a matter of law. The Sales Act goes on to provide that the acceptance of goods does not discharge the seller from liability in damages or other legal remedy for breach of the contract, unless the buyer fails to give notice to the seller of the breach within a reasonable time after he knows or ought to know of it. General Statutes, § 4669. The defendant in its answer has not pleaded any breach of warranty or rescission of the contract for this or other cause, but relies solely upon the defective condition of the caps and their worthlessness to it. The claim is essentially one for failure of consideration. In the absence of any pleading of notice to the plaintiff of its breach of the contract within a reasonable time after acceptance of the caps, the judgment for the defendant upon the answer cannot be sustained. *Williamsburgh Stopper Co.* v. *Bickart,* 104 Conn. 674, 680, 134 Atl. 233.

The counterclaim alleges an express warranty of the quality of the caps furnished to the defendant by the plaintiff, but the basis of judgment and of defendant's present claim before us is an implied warranty. No question is, however, raised because of this discrepancy. The defendant made known to the plaintiff that the caps were to be used for the purpose of bottling its beverages; indeed, the markings upon them indisputably showed that they were to be used to bottle ginger ale. The defendant relied upon the plaintiff's skill and judgment to supply it with caps reasonably fit for the purpose intended. Under these circumstances there was a basis for the conclusion of the court that there was an implied warranty of the reasonable

fitness of the caps for the defendant's use in its business. General Statutes, § 4635. As we have already pointed out, while there is no express finding of their acceptance, the use of most of them and the retention of the others from the time of the last delivery in August, 1926, until the trial of the case in November, 1929, coupled with a failure of any finding of notice of their rejection given by the defendant to the plaintiff, establishes an acceptance of them by the defendant as matter of law. General Statutes, § 4668. Other questions aside, if the defendant complied with the terms of the statute providing a recovery for damages after acceptance of goods, it was entitled to recover for breach of warranty. The statute provides that the acceptance of goods by a buyer shall not discharge the seller from liability in damages for breach of any promise or warranty except as follows: "But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." General Statutes, § 4669. The defendant cannot then recover unless within a reasonable time it gave notice to the plaintiff of "the breach of . . . warranty." The purpose of the provision requiring such a notice is clearly to give the seller timely information that the buyer proposes to look to him for damages for the breach, that the former may govern his conduct accordingly. Such notice need take no special form, but it must be such as fairly to apprise the seller of that intention. *Wildman Mfg. Co.* v. *Davenport Hosiery Mills,* 147 Tenn. 551, 249 S. W. 984; *American Mfg. Co.* v. *United States Shipping Board E. F. Corp.,* 7 Fed. (2d) 565, 566; *Federal Sugar Refining Co.* v. *Midland Grocery Co.,* 23 Fed. (2d) 167, 169; *Chess & Wymond Co.* v. *La Crosse Box Co.,* 173

Wis. 382, 387, 181 N. W. 314; *Tegen* v. *Chapin,* 176
Wis. 410, 187 N. W. 185; *Nashua River Paper Co.* v.
*Lindsay,* 249 Mass. 365, 370, 144 N. E. 224; *Regina Co.*
v. *Gately Furniture Co.,* 154 N. Y. Supp. 888, 889.
Where the question whether proper notice was given
depends upon the construction of a written instrument
or the circumstances are such as lead to only one rea-
sonable conclusion, it will be one of law, but where the
conclusion involves the effect of various circumstances
capable of diverse interpretation, it is necessarily one
of fact for the trier.

The trial court has found as follows: When the de-
fendant began to receive complaints from its customers
and found the trouble to be due to defective caps, it
immediately informed the plaintiff of these defects,
and was assured by it that it would have no further
trouble and a change of design was advised, which was
made. After the change complaints from the defen-
dant's customers increased and immediately upon re-
ceiving them it informed the plaintiff. Thereupon
the plaintiff advised a further change of design, with
another assurance that there would be no further
trouble, and the defendant relying upon this advice ac-
cepted the new design. This resulted in still larger
and more frequent damages, causing the defendant to
cease using any of the plaintiff's caps. The plaintiff
was at all times informed by the defendant and knew
of the damages the defendant was suffering and of the
adjustments on this account it was making with its cus-
tomers and on every occasion England as the plaintiff's
representative promised the defendant an adjustment
of damages and gave assurances that the caps would
cause no further trouble. The defendant, relying on
these promises and representations and England's ad-
vice as to changes in design, continued to use the caps.
The plaintiff also knew that the defendant was com-

pelled to take back great quantities of its product and to destroy many cases, that it was losing its customers, and that its business was being greatly damaged. Among its conclusions the trial court states again that the defendant upon receiving complaints as to the defective quality of the caps and the damage caused thereby immediately made known the facts to the plaintiff and the damage caused thereby.

An examination of these findings discloses that the court has not found that the defendant ever gave an express notice that it claimed a breach of warranty or that its conduct was such as reasonably to apprise the plaintiff of such a claim. The judgment can therefore be sustained only if the facts found point to that as the only reasonable conclusion. We cannot say that they do. It is no doubt true, as Rugg, Chief Justice, said in *Nashua River Paper Co.* v. *Lindsay,* 242 Mass. 206, 210, 136 N. E. 356, that complaints as to the quality of goods furnished may be found to constitute a sufficient notice of a breach of warranty. But that can be true only where the complaints under all the circumstances of the case are such as reasonably to apprise the seller that the buyer intends to claim damages for the breach. Thus, in *Wildman Mfg. Co.* v. *Davenport Hosiery Mills, supra,* there were repeated complaints over delays in the shipment of certain machines and the buyer explained that it was suffering losses by reason of them, yet the court held this not to constitute notice within the statute, saying (p. 570): "While this letter is full of complaints, and refers to the broken promises of the Wildman Company, we see nothing here indicating an intention to claim damages for breach of contract. The intimation is, rather, that the Wildman Company, if it persists, will alienate good friends and lose valuable future custom." See also *Chess & Wymond Co.* v. *La Crosse Box Co., supra,* p.

387. Such complaints as the defendant made as to the losses it was suffering might have been merely the means it adopted to urge upon the plaintiff an improvement in the quality of the caps. The defendant continued for more than a year after the trouble developed to accept caps from the plaintiff and to pay for them. The trial court's findings that it relied upon the assurances of the plaintiff's representative that it would have no further trouble and his promises of adjustment of losses suggest that it had no intention at the time to rely upon a claim based upon a breach of warranty. Nor is it without significance that the claim of the defendant for this breach appears as a counterclaim filed only after the plaintiff brought its action to recover the price of the caps it had not been paid for. Since neither as matter of law nor by the finding of the court does it appear upon the record that there was a compliance with the provision of the statute requiring notice by the defendant to the plaintiff of a breach of warranty within a reasonable time, the judgment upon the counterclaim cannot stand.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.