SAMUEL LIEBERMAN *vs.* W. M. GULLIKSEN MFG. CO.

Suffolk.    January 7, 1955. — April 1, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Sale,* Warranty. *Notice.*

A buyer of a large quantity of small parts shipped in a series of shipments over a considerable period and not identifiable with particular shipments might properly be found to have given the seller sufficient notice of breach of warranty of quality under G. L. (Ter. Ed.) c. 106, § 38, where the buyer seasonably informed the seller orally of having received complaints of cracking of the parts "from all over the country," told the seller that he was "alarmed about the complaints as he might lose his business," and showed the seller many letters of complaint.

CONTRACT. Writ in the Superior Court dated December 4, 1947.

The action was tried before *Smith, J.* Following the recording of a verdict for the plaintiff under leave reserved, the judge entered a verdict for the defendant, and the plaintiff alleged exceptions.

*Leo V. Concannon,* (*Edward M. Dangel & Leo E. Sherry* with him,) for the plaintiff.

*Gordon D. Boynton,* for the defendant.

SPALDING, J. The plaintiff brings this action of contract to recover for an alleged breach of warranty with respect to certain water filter parts purchased by him from the defendant.

There was evidence of the following: The plaintiff since 1940 had been a manufacturer of "plastic items," one of which was a water filter. In the spring of 1940 he negotiated with one Gulliksen, who was then doing business under the trade name of Gulliksen & Company, with a view to having him manufacture parts of water filters for him. As a result of these negotiations an arrangement was made whereby Gulliksen was to manufacture these parts for the plaintiff. There were two parts to be manufactured, a top and a bottom, which were red and black respectively. At the time the arrangement for the manufacture of these parts was made the plaintiff told Gulliksen that he wanted a filter that could be used in hot or cold water and Gulliksen told him that the filter he would make "would work one hundred per cent and would withstand hot and cold water and would not contract or expand." The filter parts were to be made of a plastic which Gulliksen would obtain from the "Bakelite Corporation."

On December 31, 1943, Gulliksen formed the defendant corporation to carry on the business previously done by him individually; a majority of the defendant's stock was held by Gulliksen.

Gulliksen died in June, 1945, and thereafter the defendant's business was managed by a Mrs. Cohen. The plaintiff talked with her about two days after Gulliksen's death and

stated that he hoped the quality of the filters would continue to be the same, and she replied that it would and that she would "guarantee . . . that . . . [the] material which has been going into . . . [the] water filter . . . [would] be the same as when Mr. Gulliksen was alive." In 1945 the plaintiff purchased from the defendant 151,885 "black bottoms" for the filter and in 1946 he purchased 125,821.

Commencing in the early summer of 1945 and continuing to as late as 1948 the plaintiff received numerous complaints from customers concerning the filters, and many customers sent them back.[1] The general tenor of these complaints was that cracks appeared in the bottom part of the filters shortly after they were used. The extent to which these complaints were brought to the defendant's attention will be discussed later.

Experts called by the plaintiff testified that tests revealed that the filter bottoms manufactured by the defendant either did not contain a sufficient amount of water-resistant resin or had not been "cured long enough at the proper temperature" and were not suitable for water filters.

The case was submitted to a jury who returned a verdict for the plaintiff under leave reserved. Subsequently, on motion of the defendant, the judge entered a verdict for the defendant and the plaintiff's exception to this action brings the case here.

At the arguments before us the defendant conceded that the jury could have found that the filter parts were sold with a warranty. And the jury also could have found that the quality of many of them did not conform to the warranty. The defendant does not contend otherwise, but it does contend — and this is the sole ground put forward by it in support of the action of the trial judge — that the evidence would not warrant a finding that the plaintiff gave notice to the defendant of the breach of warranty in accordance with G. L. (Ter. Ed.) c. 106, § 38. Section 38

---

[1] The plaintiff estimated that "the total value of the returns made to him was somewhere around $4,100."

provides in part that "if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

The evidence relating to the issue of notice was as follows: In the early summer of 1945 the plaintiff began to receive complaints from customers that the bottom parts of the filters were cracking. After receiving a half dozen or more of such complaints the plaintiff went to see Mrs. Cohen, the defendant's manager. He asked her whether "something was wrong since Gulliksen died" and whether the filters were being made out of the same material as Gulliksen had used. He told her that he had been "getting complaints from all over the country about the bottom part cracking and showed her the letters that he had received." Mrs. Cohen read all of the letters and said, "I am surprised and I am just wondering whether or not the material is coming through the same from the Bakelite Company." The plaintiff replied that the responsibility for checking with the Bakelite Company was hers, and Mrs. Cohen said she would look into it. This conversation was in June, 1945. After a week or ten days the plaintiff, who had in the meantime received additional letters from customers, brought them to Mrs. Cohen. He told her on that occasion that he "was alarmed about the complaints as he might lose his business." Mrs. Cohen told the plaintiff "not to get alarmed" and that "they would look into it and see if it could be straightened out." The plaintiff showed, all told, forty-three letters of complaint to Mrs. Cohen.

Neither the form nor the substance of the notice is prescribed by the statute. But in a series of decisions certain general principles concerning the notice have been stated. The notice may be either written or oral. Where practicable, it should refer to particular sales and it must fairly advise the seller of the alleged defects. Although the notice need not take the form of an express claim for damages, or threat of such, it ought to be reasonably inferable there-

from that the buyer is asserting a violation of his legal rights. *Nashua River Paper Co.* v. *Lindsay*, 249 Mass. 365, 370. *Idzykowski* v. *Jordan Marsh Co.* 279 Mass. 163, 167. *Jamrog* v. *H. L. Handy Co.* 284 Mass. 195, 199. *Johnson* v. *Kanavos*, 296 Mass. 373, 377. *Guthrie* v. *J. J. Newberry Co.* 297 Mass. 245, 247. *Morin* v. *Stromberg*, 309 Mass. 146, 149. *Howard* v. *Lowell Coca-Cola Bottling Co.* 322 Mass. 456, 460. Tested by these principles we are of opinion that the notice here was sufficient. It fairly apprised the defendant of the defects of which the plaintiff was complaining. While no particular sale was referred to, that was not fatal in the circumstances. Large quantities of filter parts were sold to the plaintiff and apparently these were sold in a series of shipments over a considerable period. There were not, so far as appears, any marks on the parts to identify them with any particular shipment. The complaints received by the plaintiff from customers were numerous and covered a substantial period. In many instances it would have been difficult if not impossible for the plaintiff to connect the complaints with a particular shipment from the defendant. Moreover, we think that it is reasonable to infer that the defects were not peculiar to a particular shipment but were common to many, if not all, of them. We think that it is reasonably inferable that the plaintiff in giving the notice was doing so for the purpose of asserting his legal rights. In this respect the case at bar is quite similar to *Jamrog* v. *H. L. Handy Co.* 284 Mass. 195, 199. There it was held that a notice in the form of a complaint unaccompanied by an express assertion of legal rights was, in the circumstances, sufficient. See *Nashua River Paper Co.* v. *Lindsay*, 242 Mass. 206, 210. No contention is made that the notice was not seasonable.

It follows that the plaintiff's exceptions are sustained and judgment is to be entered on the verdict returned by the jury.

*So ordered.*