Harold **ADLER** and Vera **Adler,** d/b/a Adler Construction Company, and Continental Casualty Company, Appellants,

v.

UNITED STATES of America, for the Use and Benefit of the General Tire & Rubber Company, a Corporation, Appellee.

**No. 16171.**

United States Court of Appeals Eighth Circuit.

Oct. 14, 1959.

Joseph M. Butler, Rapid City, S. D. (Bangs, McCullen & Butler, Rapid City, S. D., were with him on the brief), for appellants.

Harold R. Hanley, Rapid City, S. D. (Hanley, Costello & Porter, Rapid City, S. D., were with him on the brief), for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This action, based on Title 40 U.S.C.A. §§ 270a–270d, known as the Miller Act, was brought by the United States of America for the use and benefit of the General Tire & Rubber Company, a corporation, appellee herein (sometimes referred to as "plaintiff"), against appellants here, Harold Adler and Vera Adler, d/b/a Adler Construction Company, and Continental Casualty Company, surety on the payment bond furnished by the Adlers. (Unless otherwise indicated, the

appellants will be referred to collectively as "defendants.") Since the events giving rise to this action primarily concern the tire company and the defendant, Mr. Adler, for the purpose of clarity, we shall refer to them respectively as "General" and "Adler."

The purpose of the suit was to recover the sum of two promissory notes executed by the Adlers on January 27, 1956, in the face amount of $6,000 each, less a credit of $65.55, plus interest, attorney fees and costs. The notes were given in payment for tires purchased from General. There was no issue made as to the liability of the defendants for the amount sued for, and, pursuant to the court's instructions, the jury found for plaintiff on its complaint, and in due course, judgment was rendered in favor of plaintiff and against the defendants for $11,934.-45, with interest and costs. That part of the court's judgment is not in question here.

The jury also awarded the Adlers $12,-750 on their counterclaim, based on breach of warranty, the allegations of which will receive additional attention in the course of this opinion. The court sustained plaintiff's after-trial motion for judgment notwithstanding the verdict on defendants' counterclaim, and rendered judgment for plaintiff thereon. This appeal brings into focus the propriety of the court's action in that respect.

The trial court sustained the motion for judgment notwithstanding the verdict on the counterclaim for these reasons, which received exhaustive attention in the memorandum opinion of the trial court:

(1) That the notice of the claimed breach of the warranty, as required by § 54.0149 of the South Dakota Code (1939) was not timely given.

(2) That the oral statement by General's representative in January, 1954, did not constitute an express warranty as defined by § 54.0112 of the South Dakota Code (1939), but was merely "dealer's talk," "puffing" or "opinion,"

and that the Adlers had not relied on such representations.

(3) That the evidence failed to show breach of the alleged warranty.

(4) That the evidence with respect to damages allegedly sustained was wholly inadequate, did not prove the damages with reasonable certainty, and the jury was required to resort to speculation and conjecture in arriving at damages claimed by the Adlers.

From the voluminous record before us, the evidence may be summarized as affording proof of these pertinent facts: Adler and his wife, as a partnership, were engaged in the heavy construction business, and in November, 1952, the Adler Company commenced work on the Pactola Dam Project in South Dakota. At that time and until about the middle of March, 1954, the Adlers were using rayon tires, manufactured by General, on their heavy construction equipment. In January, 1954, Adler had a conversation with a representative of General relative to changing from rayon to "Nygen" (nylon fabric) tires. In effect, Adler testified that on this occasion, General's representative stated that its Nygens were very durable tires; that they were more cut resistant and would have double the life of its rayon tires; that the price of Nygens would be 25% more than the rayons, but because Nygens would give twice the wear, they would still be a good buy. The evidence establishes that after that conversation, and in the early part of 1954, the Adlers began purchasing General's Nygen tires in three large sizes, and, continuing through 1955, a total of 124 Nygens were purchased for use on the Pactola project. After January 1, 1956, the Adlers purchased tires from another concern.

All of the Nygen tires in question were covered by General's "Standard Warranty for All Tires and Tubes," which provided:

> "Every tire and tube of our manufacture, bearing our name and serial number, is guaranteed to be free from defects in workmanship and material, without limit as to time or

mileage. If our examination shows said tire or tube has failed under the terms of this guarantee, we will either repair it or make a reasonable allowance on the purchase of a new tire or tube."

Sometime during the early spring of 1955, Adler began to complain about defects in the tires. It appears without dispute that adjustments were made by General on individual Nygen tires under the standard warranty, and these adjustments were accepted by Adler. Exhibits prepared by Adler show that these adjustments, made from April, 1955, through the latter part of September, 1956, totalled $6,669.55.

The tires were sold to the Adlers on open account and in January, 1956, they were indebted to General in the approximate amount of "thirty-one thousand five or six hundred dollars." General was pressing them for payment, and an arrangement was agreed upon whereby the Adlers, on January 27, 1956, executed five promissory notes for $6,000 each, the first being payable in February, 1956, the others in succeeding months through June 15, 1956. Three of these notes were paid, the last payment being made, according to Adler, on August 15, 1956. As heretofore stated, plaintiff's action was based upon the remaining two notes which were not paid. In addition to the notes totalling $30,000, the Adlers were also indebted to General on an open account in the amount of something over $1,000, and in September, 1956, an adjustment was made by General on seven additional tires under the standard warranty, whereby the Adlers received a credit of $1,177, which wiped out the balance due from them on this open account.

Defendants' counterclaim set up the standard warranty, a claimed warranty regarding "recap" value, and alleged that General had *refused to make proper adjustments*. The counterclaim further alleged that the *adjustments due* were in excess of $46,989, and prayed recovery against General in that amount. However, during the trial, which commenced on September 10, 1958, it was developed that the Adlers were seeking recovery on the counterclaim on the theory that the statement made by General's representative in January, 1954, which in substance was that General's Nygens were twice as durable, more cut resistant and would have double the life of rayon tires, constituted an express warranty; that the Adlers relied upon this warranty, and that there was a breach thereof, resulting in damages in the amount prayed for in the counterclaim.

South Dakota is one of the 35 states which has adopted the Uniform Sales Act. See Uniform Laws Annotated, 1 U.L.A. Sales, 1958 Cumulative Annual Pocket Part. Section 54.0149 of the South Dakota Code (1939), which is identical to § 49 of the Uniform Sales Act, provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

▪ Assuming, arguendo, that an express warranty came into existence as the result of the statement made by General's representative in January, 1954; that the Adlers relied thereon, and that there was a breach thereof, they were still under a duty to comply with the notice requirement contained in the foregoing section in order to sustain their claim for damages for breach of such warranty. In the recent case of Vander Eyk v. Bones, S.D., 91 N.W.2d 897, the Supreme Court of South Dakota in adressing itself to SDC 54.0149, reiterated the points made in Jan Ree Frocks, Inc. v. Pred, 68 S.D. 356, 2 N.W.2d 696, 697, stating, 91 N.W.2d at

page 901: "The purchaser has neither a right of action for the breach of a promise or warranty nor a defense for the purchase price, unless the required notice has been given (citing authorities). The giving of such notice must be pleaded and proved by the purchaser seeking to recover or defend for the breach of warranty. [Citing among others the case of Truslow & Fulle, Inc. v. Diamond Bottling Corp., 112 Conn. 181, 151 A. 492, 71 A.L.R. 1142]."

While the Supreme Court of South Dakota has not expressly ruled on the purpose of the notice, it dealt with the form, scope and sufficiency thereof in Gilger v. Montgomery Lumber Co., 73 S.D. 599, 47 N.W.2d 281, 282, in this language:

"SDC 54.0149 is Section 49 of the Uniform Sales Act. Construing this section the courts have generally held, as stated in 46 Am.Jur., Sales, Sec. 257: 'Notice of breach of contract which a statute requires a buyer to give the seller in order to hold him liable after acceptance need take no special form. *It seems clear that it must refer to particular sales, so far as that is practicable; that it must at least fairly advise the seller of the alleged defects; and that it must be such as to repel the inference of waiver.'*" (Emphasis supplied.)

See, also, and compare, Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S.W. 984; Lieberman v. W. M. Gulliksen Mfg. Co., 332 Mass. 439, 125 N.E.2d 396, 398, 53 A.L.R.2d 266; Nashua River Paper Co. v. Lindsay, 249 Mass. 365, 144 N.E. 224, 225; Howard v. Lowell Coca-Cola Bottling Co., 322 Mass. 456, 78 N.E.2d 7, 10; Hazelton v. First Nat. Stores, 88 N.H. 409, 190 A. 280, 283; Henderson Tire & Rubber Co. v. P. K. Wilson & Son [Court of Appeals of N. Y.], 235 N.Y. 489, 139 N.E. 583 (complaints of inferior quality not sufficient); and Schaefer v. Weber, 265 Wis. 160, 60 N.W.2d 696.

Defendants vigorously insist that the evidence furnishes sufficient proof to create a jury issue on the question of notice. In particular, they rely upon the testimony of Adler to the effect that on July 27, 1955, he had a conversation with representatives of General in which Adler stated, in substance, that about two months earlier he had informed General's Denver office that "we were having too much difficulty with the Nygen tires. We advised them that the durability simply wasn't there." Adler also testified that although the first Nygen tires were purchased in March, 1954, the tires were not in service long enough until late spring, 1955, "to realize all of the difficulties that we were encountering."

■ We recognize that the question of the sufficiency of the notice ordinarily presents a factual issue, properly to be determined by a jury; however, where all of the evidence is such as to compel reasonable men to reach only one conclusion, the question is one of law. See, Vander Eyk v. Bones, S.D., 91 N.W.2d 897; Jan Ree Frocks, Inc. v. Pred, 68 S.D. 356, 2 N.W.2d 696, 697; Truslow & Fulle, Inc. v. Diamond Bottling Corporation, 112 Conn. 181, 151 A. 492, 71 A.L.R. 1142, and see Annotation 71 A. L.R. 1149.

It must be remembered that transactions between General and the Adlers relative to Nygen tires extended over a period of more than two years, and that for approximately 18 months adjustments under the standard written warranty were made. In this situation, the overall picture must be viewed if we are to arrive at a proper interpretation of the July, 1955, conversation. Application of this guide demonstrates beyond dispute that the acts and conduct of the Adlers from the spring of 1955 through September, 1956, considered collectively, are destructively inconsistent with the contention that the Adlers were relying upon the express warranty in their numerous dealings with General. In addition to the existence of the standard written tire warranty, which we consider an important factor, we have these additional circumstances: adjustments were

made under such warranty as late as September, 1956; the continued purchase by the Adlers of Nygen tires after they claim they discovered the lack of durability; the execution by the Adlers of notes for $30,000 in January, 1956, representing practically the entire amount of their indebtedness to General; payment by the Adlers of three of the five notes; the warranty relied upon on this appeal was not asserted as a basis for their counterclaim filed more than two years after the Adlers now claim they knew the express warranty was breached; Adler's failure to assert reliance on the claimed oral warranty in the pre-trial examination or deposition, taken April 30, 1956.

Consideration of the notice said to be encompassed in the July, 1955, conversation, in light of the foregoing impelling circumstances, compels these conclusions: (1) Adler was not at that time relying upon breach of the express warranty; (2) such notice was by no means sufficient to repel the inference of waiver of such breach; (3) as the trial court found, all that can reasonably be inferred from said conversation is that Adler was dissatisfied with the adjustments received under the standard tire warranty.

Left for determination is whether the notice given by Adler on September 27, 1956, was sufficient and timely. On that day, which was a few days after the final inspection, adjustments and credits had been made, Adler had a telephone conversation with Mr. Larson, General's representative, which, according to Adler, was to this effect:

"Mr. Larson again asked me what I was going to do about the balance due on the note. I advised him that we were dissatisfied with the adjustments that had been received previously, and, likewise, very much dissatisfied with the small adjustments just recently received. I advised him that in their original dealings the Nylons were supposed to be twice as durable, twice the tire life and subject to further recapping due to nygen cord and that we had not received that type of life. I asked him whether he had any idea of what the actual cost of carcasses was. I further advised him that we would not, under any condition, borrow funds from the bank in order to pay off the disputed account upon which there were many adjustments due; and the adjustments at this time were in excess of our balance due on our so-called notes."

The trial court held that the foregoing was the first sufficient notice that the tires did not meet the requirements of the "claimed oral warranty," and held, as a matter of law, that this notice was not given within a reasonable time within the contemplation of the South Dakota statute. Assuming that Adler's September 27, 1956, conversation constituted a notice of breach of the "double life" warranty, clearly this notice was not given "within a reasonable time after the buyer knows, or ought to know of such breach, * * *." From Adler's own testimony, we learn that he began to experience "difficulty" with the Nygen tires in the spring of 1955,—yet more than a year elapsed before any semblance of a proper notice was given. The South Dakota Supreme Court has ruled that the question of what is a reasonable time under the statute may be one of law. See Vander Eyk v. Bones, S.D., 91 N.W.2d 897, 901 (knowledge of breach in August, 1955; no notice until February, 23, 1956; held as a matter of law that notice was not given with reasonable promptness) and cf. Jan Ree Frocks, Inc. v. Pred, 68 S.D. 356, 2 N.W.2d 696. See also, Schaefer v. Weber, 265 Wis. 160, 60 N.W.2d 696, 699; Hazelton v. First Nat. Stores, 88 N.H. 409, 190 A. 280, 283; American Mfg. Co. v. United States Shipping Board E. F. Corp., 2 Cir., 7 F.2d 565; Annotation 41 A.L.R.2d 812; and cf. Victorson v. Albert M. Green Hosiery Mills, Inc., 3 Cir., 202 F.2d 717, 41 A.L.R.2d 806; Truslow & Fulle, Inc. v. Diamond Bottling Corp., 112 Conn. 181, 151 A. 492, 71 A.L.R. 1142.

The teachings of the foregoing cases compel us to hold that the evidence was insufficient to create a jury issue on the question of the timeliness of the notice.

The judgment appealed from is Affirmed.