## STATE OF CONNECTICUT *v.* JUAN NEGRON

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 7-41352

Argued April 15—decided May 17, 1968

*Zbigniew S. Rozbicki,* of Hartford, for the appellant (defendant).

*Dennis F. Gaffney,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. These facts appear of record: On January 7, 1967, the defendant, while operating his motor vehicle in the town of North Haven, Connecticut, was involved in an automobile accident, requiring him, under § 14-108 of the General Statutes, to file an accident report with the commissioner of motor vehicles. On January 23, 1967, the defendant filed a written report of the accident on a form prescribed by the commissioner (§ 14-108a) which contained all available detailed information disclosing the cause of the accident, the conditions then existing and the vehicles involved. The report disclosed that the defendant did not have an "automobile liability policy providing . . . [for] at least $20,000 bodily injury and $1000 property damage liability insurance in effect on the date of the accident." On April 5, 1967, the commissioner, acting under § 14-117 (a), notified the defendant by letter that he was subject to the Connecticut financial responsibility law and advised him that he, the commissioner, made a determination that "[t]he sum of $770 must be deposited [by the defendant] with the commissioner of motor vehicles as proof of your ability to satisfy any judgment(s) which may be rendered against you as a result of possible court action." The letter also advised the defendant that in the event of noncompliance with the security deposit requirements, within the time specified in the letter, "it will become necessary to invoke the penalties of the Connecticut Safety Responsibility Law" by suspending "your driver's license" and "all license plates and registration certificates issued in your name." By letter dated April 14, 1967, in response to the commissioner's communication of April 5, the defendant questioned the commissioner's determination of a security deposit requirement of $770. The commissioner, by letter dated May 8, 1967, again advised the defendant of the

security deposit requirement "as laid down to you in our evaluation letter" and added: "To close out this accident case we require a security deposit in the amount of $770 by cash, cashier's check, certified check or money order written payable to the commissioner of motor vehicles or properly notarized releases from . . . [the claimants]. This correspondence will not stay any suspension action, which is an automatic procedure." On May 26, 1967, the commissioner forwarded, by certified mail, return receipt requested, a "Suspension Notice" to the defendant at his address as shown by the records of the commissioner, notifying him that his driver's license and registration privilege were suspended, effective June 1, 1967. At the foot of the suspension notice, there appears a notation which reads as follows: "The police have been notified of your suspension." See General Statutes § 14-111 (d). On June 2, 1967, the defendant, while operating his automobile on a public highway in the town of Meriden, was served with a summons, charging him with operating a motor vehicle while his license was under suspension in violation of § 14-215 of the General Statutes.

Upon the facts as we have recited them, the trial court concluded that, "[b]y his notice letter of April 5, 1967, the commissioner of motor vehicles complied with the notice of suspension requirements contained in § 14-117 (b) of the General Statutes" and "that his [defendant's] license was automatically subject to suspension upon [his] failure to comply with the notice of April 5, 1967."

"Many statutes have been enacted directed to the problem of the financially irresponsible motorist." 7 Blashfield, Automobile Law and Practice (3d Ed.) § 272.1, p. 14. In 1951, the General Assembly enacted the so-called financial responsibility law. Public Acts 1951, No. 179, as amended, General Statutes

§§ 14-113—14-133. "The purpose of the legislature in enacting the financial responsibility provisions of the motor vehicle law was to keep off our highways the financially irresponsible owner or operator of an automobile who cannot respond in damages for the injuries he may inflict, and to require him, as a condition for securing or retaining a registration or an operator's license, to furnish adequate means of satisfying possible claims against him." *Dempsey* v. *Tynan,* 143 Conn. 202, 208. "It should be noted that our financial responsibility law has two aspects. One aspect, with which we are concerned here, is the requirement that the owner and operator of a car involved in an accident, if not effectively insured, must give security for the satisfaction of any claims for damages arising from that accident or suffer, inter alia, the loss of his privilege to operate a motor vehicle in this state. General Statutes § 14-117. The other aspect, with which we are not here concerned, is the requirement that one found to have violated certain enumerated provisions of the motor vehicle law must provide, by insurance or otherwise, financial responsibility for future accidents. General Statutes § 14-112 . . . ." *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 647 n. (dissenting opinion).[1] We are concerned here with the aspect of our financial responsibility law which has been characterized as the "after accident" type. General Statutes § 14-117 (a); see 60 C.J.S., Motor Vehicles, § 110 (b).

The state has pressed upon us the claim that the defendant operator's license and registration cer-

---

[1] For discussions treating Connecticut's first financial responsibility law, see Collins, "Implementation of Public Policy Against the Financially Irresponsible Motorist," 19 Brooklyn L. Rev. 11, 14; "Motor Vehicle Financial and Safety Responsibility Legislation," 33 Iowa L. Rev. 522, 525; Stoeckel, "Compulsory Insurance and Financial Responsibility Laws for Motorists." 35 Am. City Mag. 873.

tificate were effectively suspended under § 14-111 (a) of the General Statutes. That statute confers on the commissioner broad power to suspend or revoke any registration or any operator's license issued under the laws of this state "for any cause that he deems sufficient, with or without a hearing." "This does not mean that this power is absolute and not subject to review." *Dentamaro* v. *Motor Vehicles Commissioner,* 20 Conn. Sup. 205, 208. We cannot agree with the state's claim that the commissioner was exercising his powers under § 14-111 (a).

The sole question on this appeal is whether the defendant operator's license was effectively under suspension on June 2, 1967. We are of the opinion that it was not.

The appeal turns on the issue of notice. "Where the question whether proper notice was given depends upon the construction of a written instrument or the circumstances are such as lead to only one reasonable conclusion, it will be one of law, but where the conclusion involves the effect of various circumstances capable of diverse interpretation, it is necessarily one of fact for the trier." *Truslow & Fulle, Inc.* v. *Diamond Bottling Corporation,* 112 Conn. 181, 188; *Sapiente* v. *Waltuch,* 127 Conn. 224, 226. Since the question of the sufficiency of the notice in this case involves construction of written instruments, it is one of law. Moreover, where "there is any ambiguity in the terms of a notice, rendering its meaning doubtful, the doubt must be resolved against the person giving the notice." 66 C.J.S., Notice, § 19 (a). An examination of the official suspension notice discloses that under the heading "statutory action," the commissioner himself cited and relied on § 14-117 (b) as authority for his action and not on § 14-111 (a), as claimed by the state. Since the commissioner himself was at-

tempting to proceed under § 14-117 (b), he is bound by its mandate. That statute specifically provides that "notice of such suspension shall be sent by the commissioner to such operator and owner not less than ten days prior to the effective date of such suspension . . . ." "The general view rightly regards express legislative provision for notification as 'mandatory' and requires strict compliance therewith." 1 Merrill, Notice § 547, p. 576; see 66 C.J.S., Notice, § 16 (a). "Notification fixes notice from the time it is effective." 1 Merrill, op. cit. § 495, p. 463. "The giving of such ten-day notice is a prerequisite to the suspension of license under the financial responsibility law." *State* v. *Massaria,* 2 Conn. Cir. Ct. 301, 304.

The commissioner having failed to comply with the ten-day notice requirement of § 14-117 (b), we hold that the defendant operator's license was not effectively suspended on June 2, 1967.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion KOSICKI and WISE, Js., concurred.