VANDER EYK, Appellant v. BONES, Respondent

(91 N.W.2d 897)

(File No. 9703. Opinion filed September 9, 1958)

**Leo P. Flynn,** Milbank, for Plaintiff and Appellant.

**Andrew W. Bogue,** Canton, for Defendant and Respondent.

LAMPERT, Circuit Judge. Plaintiff brings this action to rescind a sale of a bull and recover $800, the amount of the purchase price of the bull, and $200 to cover damages done to the plaintiff as a result of the fact that cows were not bred at the proper time by reason of the breach of an express warranty.

The case was tried to the court without a jury, and judgment was entered for the defendant; from this judgment plaintiff appeals.

The plaintiff is a farmer seventy-six years of age who came to the United States when he was thirty-five years of age, and lives at Milbank, South Dakota. He has a farm about nine miles east of Milbank where he raises cattle, which occupation he was engaged in for a period of some

twenty years before moving to the town of Milbank some seven years prior to the commencement of this action. His son resides upon the farm and operates the business for himself and his father. Plaintiff raises Hereford cattle on the farm and buys the bulls which he uses for breeding purposes.

The defendant is engaged in raising registered Hereford cattle and raises and sells registered Hereford cattle for breeding purposes. The defendant on April 30, 1955, held one of his annual spring sales of Hereford cattle, and prior to the sale mailed to persons whom he considered prospective purchasers, a sales catalogue announcing the sale of forty bulls and twenty-three heifers on April 30, 1955, which catalogue contained the following statement, "All bulls are guaranteed breeders;". One of these catalogues was mailed to the plaintiff. The plaintiff attended the sale on April 30th, and purchased a registered Hereford bull known as No. 35, whose registered name is BHR "Battle Pioneer," and paid the purchase price of $800. The bull purchased was born May 10, 1953, being at the date of the sale almost two years of age.

The plaintiff took the bull home, kept it in a barn and enclosure with another older bull, from the date of sale to the 1st day of July, 1955, when he placed the bull in a pasture with thirty-nine cows. The bull purchased appeared from observation to be a fine strong animal with a good disposition. The bull was kept with the thirty-nine head of cows for a period of some six or seven weeks following the 1st day of July, 1955, and no other bull was placed with these cows.

Both the plaintiff and his son testified that none of the cows were bred by this bull, Battle Pioneer, and that about the middle of August the bull purchased was taken out of the pasture in which the thirty-nine cows were kept, and that the old Hereford bull owned by the plaintiff was then placed with these cows and bred all of the cows. The son testified that he observed the bull, Battle Pioneer, and the cows during the time that Battle Pioneer was kept with the cows, that when the bull was first placed with the cows that he would mount the cows,

but would not complete the service, that many of the the cows again came in heat within the period of three weeks after the previous period when Battle Pioneer had been with them. He further testified that the cows with which Battle Pioneer was kept were not bred at the time when Battle Pioneer was taken from the pasture about the middle of August, 1955, and that on several occasions during the time when Battle Pioneer was kept with these thirty-nine cows, that he had informed his father he was dissatisfied with the bull, and to the effect that it appeared the bull was not performing his services as a breeder. The plaintiff likewise testified that the bull, Battle Pioneer, did not breed the cows, and that his son had advised him concerning the performance of the bull, and that he had told the son to try the bull a little longer.

Both plaintiff and his son testified that no calves were born to the bull, Battle Pioneer; after Battle Pioneer was taken from the pasture with the thirty-nine cows he was placed in a pasture with four cows with young calves from about the middle of August to some time in November, and according to the testimony of both the plaintiff and son, failed to breed any of these cows. The son testified as to his observation of the bull, Battle Pioneer, during the time he was in the pasture with the four cows, which was to the effect that the bull did not appear to be performing the services as a breeder, and that the cows continued to again come in heat at the end of three weeks' period, and that from time to time he informed his father of such matters. The plaintiff admitted that his son had informed him concerning the apparent lack of breeding ability of the bull, that he liked the bull, and on several instances told the son to give the bull a little more time, or made statements to that effect.

From November through January the bull, Battle Pioneer, was placed with other cows and failed to breed any cows. Neither the plaintiff nor his son gave any notice of any kind to the defendant from the time of sale until February 23, 1956, nor in any way contacted the defendant. On the 23rd day of February, 1956, the plaintiff's

son wrote a letter to the defendant, which was signed by the plaintiff, being Exhibit 14, which reads as follows: . ·

"Dear Sir: At your sale last spring April 30th 1955, I bought a bull lot No. 35 (BHR Battle Pioneer 3, calved May 10—1953.) This bull we put in the bunch of cows on are (sic) other farm in July. In about 6 or 7 weeks I noticed the cows were coming around again. So I put in the old herd bull we had, and hauled the young bull (Battle Pioneer 3) home. I had some heifers home to put him in with, and he did not settle any. So I thought he was to (sic) fat, and now he is in good breeding condition not to (sic) fat, tried him on some cows this winter give one more time and is no use. What should we do with this bull? We need a bull for this coming season that is proven breeder. Yours truly, (Signed) Arnold Vander Eyk."

Following the receipt of this letter by the defendant he wrote to the plaintiff, but the letter in response to Exhibit 14 is not in evidence, plaintiff testifying to the effect he was advised to bring the bull back on the next sale day, about two weeks subsequent to receipt of the letter in response, and the defendant testifying that he answered the letter, telling Mr. Vander Eyk that he would like to examine the bull, told him to bring the bull back, realizing that the customary six months' guarantee had gone by, but he liked to have satisfied customers. He further testified in effect that he told the son that if he couldn't find any damage to the bull he would do one of three things, give full credit on the sale of April 23rd, refund the money, or replace the bull. He further testified to the effect that he had stated it would take time to test the bull.

The bull, Battle Poineer, was taken back to the defendant's ranch on the date of sale, April 23, 1956, or thereabouts and left with the defendant, and at that time the plaintiff bought another bull for the sum of $440, and paid for the same.

There is some conflict as to what was said when

the bull was returned to the defendant; but it is clear that no adjustment of any kind was made at that time, and the plaintiff bought and paid for another bull. The defendant testified that when the bull was returned it was thin and in poor condition, that he fed the bull up, then tested the bull with two heifers, and that the bull, Battle Pioneer, bred both of these heifers, and that he returned the bull to plaintiff's farm on or about July 30, 1956. It appears plain from the evidence that the plaintiff protested the return of the bull, Battle Pioneer, to his farm on July 30. The bull, after its return to the plaintiff was kept and fed on plaintiff's farm, but was never tested by the plaintiff for breeding purposes or placed with any cows. Following the return of Battle Pioneer to the defendant on or about April 23, 1956, considerable correspondence took place between a banker representing the plaintiff, plaintiff's attorney, and the defendant, concerning an adjustment or recovery of the purchase price paid for the bull, Battle Pioneer, but no useful purpose could be served by setting out this correspondence, or the substance thereof.

This case was tried to the court without a jury, and both parties proposed Findings of Fact and Conclusions of Law. The trial court rejected the Findings of Fact and Conclusions of Law of both plaintiff and defendant, and adopted the court's own Findings of Fact and Conclusions of Law. Plaintiff and appellant, herein referred to as plaintiff, makes six assignments of error. Assignment of error number one is to the effect that the court erred in refusing to adopt and enter plaintiff's proposed Findings of Fact, assignment number two is to the effect that the court erred in failing and refusing to adopt and enter plaintiff's proposed Conclusions of Law. Assignments of error number five and six are to effect that the court erred in concluding that defendant is entitled to judgment, and in entering judgment for defendant. The only assignments deemed material insofar as this case is concerned, are assignments of error numbers 3 and 4. Assignment of error number 3 is to the effect that the court erred in adopting that part of court's Findings of Fact Number IV which reads as follows:

"* * * that such fact became known to plaintiff or should have been known to· him by the end of September, 1955, and that he failed and neglected to give notice of ·such breach of warranty to defendant until February 23, 1956. ·That no offer ·to return the bull to ·defendant was made by ·plaintiff until that date., That defendant had no knowledge of any claim by plaintiff that the bull was not a breeder until; February 23, 1956. That the plaintiff failed to give notice of any breach of warranty within· a reasonable. time after knowledge thereof."

Assignment number 4 is to the effect that the court erred in entering its Conclusion of Law "A" which reads:

"That after knowing or at a time when plaintiff should have known of the breach of warranty described by defendant, he permitted an unreasonable period of time to elapse before giving notice thereof or attempting to rescind the contract of sale."

The court's Findings of Fact Number IV reads in full as follows:

"That said bull was, not in fact a breeder and that such fact became known to plaintiff or should have been known to him by the end of September 1955, and that he failed and neglected to give notice of such breach of warranty to defendant until February 23, 1956. That no offer to return the bull to defendant was made by plaintiff until that date. That defendant had no knowledge of any claim by plaintiff that the bull was not a breeder until February 23, 1956. That the plaintiff failed to give notice of any breach of warranty within a reasonable time after knowledge thereof."

The remedies of the buyer in the event of a breach of warranty are set out in SDC 54.0169, and the plaintiff elected to proceed under (1) (d) of said section, which reads as follows:

352

"Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."

SDC 54.0149 provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

The question for our determination then is did the trial court err in finding as a fact and concluding as to the law that plaintiff did not give notice to the defendant of the breach of a warranty within a reasonable time after he knew or ought to have known that the bull was not a breeder. In the case of Jan Ree Frocks, Inc., v. Pred, 68 S.D. 356, 2 N.W.2d 696, 697, we stated:

"Acceptance of goods, however, does not discharge the seller from liability in damages or other remedy for breach of the contract, unless the buyer fails to give notice to the seller of the breach within a reasonable time after he knows or ought to know of it. SDC 54.0149. The purchaser has neither a right of action for the breach of a promise or warranty nor a defense for the purchase price, unless the required notice has been given. Williston on Sales, 2d Ed., § 484a; Trimount Lumber Co. v. Murdough, 229 Mass. 254, 118 N.E. 280; Bloch v. Eastern Mach. Screw Corporation, 6 Cir., 281 F. 777; Marsh Wood Products Co. v. Babcock & Wilcox Company, 207 Wis. 209, 240 N.W. 392. The giving of such notice must be pleaded and proved by the purchaser seeking to recover or

defend for the breach of warranty. W. S. Maxwell Co. v. Southern Oregon Gas Corporation, 158 Or. 168, 74 P.2d 594, 75 P.2d 9, 114 A.L.R. 697; Truslow & Fulle, Inc., v. Diamond Bottling Corporation, 112 Conn. 181, 151 A. 492, 71 A.L.R. 1142."

Whether notice is given within a reasonable time is ordinarily a question of fact, where the circumstances are such as to lead to only one reasonable conclusion, the question is one of law. Jan Ree Frocks, Inc., v. Pred, supra; Annotation, 71 A.L.R. 1149; Annotation, 41 A.L.R.2d 825. Plaintiff contends that the rule with reference to reasonable time is different with reference to a breeding animal than with reference to inanimate objects, and in this contention we can readily agree. The plaintiff relies to a considerable extent on the case of Edson v. Mancebo, 37 Cal.App. 22, 173 P. 484; in which the court held that it would not be unreasonable to hold that the vendee might elect to try a horse for another season to determine the horse's ability as a breeder. In that case the horse was warranted as a breeder for a period of two years. It may likewise be pointed out that that case was not decided under the uniform sales law. In the case at bar the evidence discloses that both the plaintiff and his son, who was his agent, were experienced cattlemen, that when the bull in question was first placed with cows that it appeared he was not performing the service, that as the time went on it appeared that the cows with which the bull was placed were coming in heat, and that they again came in heat within the regular period of three weeks, which would not be the case if the bull were fulfilling his services as a breeder. The evidence further discloses that at the time when the bull was placed with the cows he was more than two years of age by some month and twenty days. Certainly the plaintiff was not obligated to attempt to determine whether or not the bull was a breeder before the regular breeding season in 1955, which commenced about the 1st day of July. He had no obligation to make any test or try to determine the ability or capacity of the animal before that date but the evidence shows that the facts were such that an experienced cattleman should

have at least had reasonable grounds to believe that the bull was not performing the services for which he was purchased by the middle of August 1955. Certainly after placing the bull with the four head of cows from the middle or latter part of August 1955 to the end of September 1955, and observing the cows and bulls during that period as is disclosed by the evidence, the son as an experienced cattleman must have not only suspected but actually believed that the bull, Battle Pioneer, was not performing the services of a breeder. The son was the agent of the father, and advised the father concerning his observations both from the period of July 1st to the middle or latter part of August, and from the middle or latter part of August to the end of September. The facts in each individual case must govern whether a person knows or ought to know of the breach of a warranty. In this case the evidence discloses a constant observation of the animal. A purchaser before notifying the seller of an expressed breach of warranty is entitled to sufficient time to investigate. Annotation, 41 A.L.R.2d 824. He must, however, use reasonable diligence. Schaefer v. Weber, 265 Wis. 160, 60 N.W.2d 696; Wood v. Heyer, 179 Wis. 628, 191 N.W. 971; Tegen v. Chapin, 176 Wis. 410, 187 N.W. 185.

■ The plaintiff did nothing whatsoever in notifying or attempting to notify the defendant from the end of September until February 23rd. It is clear that the distance between plaintiff's farm and defendant's ranch under present transportation facilities was not great, that there was regular mail communication between the two points as is evidenced by the receipt of the catalogue and the correspondence. In the case of Wood v. Heyer, 179 Wis. 628, 191 N.W. 971, it was held that giving notice fifty-seven days after the plaintiff knew or ought to have known of a breach of warranty, was not within a reasonable time. When the buyer knows or ought to have known of a breach of warranty he must act with reasonable promptness in giving notice to the seller. Tegen v. Chapin supra; Jan Ree Frocks, Inc., v. Pred, supra; Annotation, 71 A.L.R. 1149, Annotation, 41 A.L.R.2d 815.

It may be observed that in the case of Schlottman v. Pressey, 10 Cir., 195 F.2d 343, it was held that where a casing collapsed in July and the buyer failed to notify the seller of the alleged breach until September, where the seller suffered no prejudice as a result of not being notified at an early date that the harsh rule of forfeiture should not apply, and that the failure to sooner give notice did not bar recovery. In the Schlottman case it was held that there was no suggestion of prejudice to the seller. In the case at bar there was testimony to the effect that the cattle market was on the decline which certainly was a matter of prejudice to the seller in not receiving prompt notice.

In this case the matter of waiver of notice on the part of the seller was not raised by a proposed finding on the part of the plaintiff, was apparently not urged before the trial court, and was not argued in this court, either by way of plaintiff's brief or by way of oral argument, nor was any assignment of error taken on the matter of waiver of notice. We will therefore not consider whether the seller by his acts or conduct in receiving the bull in April of 1956 waived the giving of notice of breach of warranty. Suffice it to say that it is doubtful whether his act in receiving the bull on or about the 23rd day of April acted as a waiver in view of the fact that the defendant had no knowledge whatsoever of the bull in any way failing to meet the warranty from the 30th day of April, 1955, until the 23rd day of February, 1956.

Finding no error, the judgment of the trial court is affirmed.

RENTTO, P. J., and ROBERTS and SMITH, JJ., concur.

LAMPERT, Circuit Judge, sitting for BOGUE, J.

HANSON, J. (dissenting).

I am unable to concur. Plaintiff purchased Battle Pioneer as a herd bull on April 30, 1955. All bulls sold by defendant were unconditionally guaranteed to be breeders. This warranty was not restricted as to time. The main issue in the case was whether or not Battle Pioneer

was or was not a breeder. Although this issue was determined adversely to the seller, plaintiff was not allowed to rescind the sale on the ground he failed to give notice of the breach of warranty within a reasonable time after he had knowledge of such breach.

Where goods have been delivered to the buyer he cannot rescind the sale if "he fails to notify the seller within a reasonable time of the election to rescind." SDC 54.0169(3). In my opinion plaintiff fully complied with this provision. As the warranty was not restricted to any stated time period plaintiff was entitled to a reasonable time in which to test the breeding qualities of the bull. The normal gestation period of a cow is nine months. The record shows plaintiff began testing the bull as soon as possible in July, 1955. The final test period continued through January, 1956. On February 23, 1956, plaintiff notified defendant of his election to rescind.

The finding of the trial court that plaintiff knew or should have known the bull was not a breeder by the end of September, 1955, unduly restricted defendant's unlimited warranty. Under the circumstances a buyer of breeding stock should not be required to elect to rescind a sale on mere suspicion the animal is not a breeder. Humbert v. Larson, 99 Iowa 275, 68 N.W. 703.

Soon after the bull was put to pasture with the cows in July, 1955, plaintiff's son questioned its breeding ability. Plaintiff, however, was not reasonably certain of this defect until late in January, 1956. If, as the court says, plaintiff knew or should have known the bull was not a breeder in September, 1955, it is difficult to understand why he continued testing the bull from November, 1955, to February 1, 1956.

In reviewing the evidence on this point we are necessarily required to view the evidence most favorable to defendant. However, the construction of the evidence should not be more favorable than defendant's own testimony. On direct examination defendant was asked the following question: "Now, in your opinion, based on your experience, Walter, what is a reasonable time in which a defect or

potency or nonbreeding qualities can be noticed in a bull?" In response defendant testified in effect it would take six months to determine that question and six months would be a reasonable time in which to determine the same. According to defendant's own testimony, it would appear a purchaser of breeding stock is entitled to at least six months in which to determine whether or not a bull is a breeder. Plaintiff should not be penalized by a shorter period.

This case is not unlike that of Wilson v. Doolittle, 114 Kan. 582, 220 P. 508, 509, in which the court said: "Defendant was entitled to a reasonable time to test out the matter of sterility before repudiating the contract of sale, and the fact that he may have expressed doubts and objections about the breeding qualities of the animal before repudiating the contract, and continued to use him thereafter, did not preclude a rescission of the contract if the continued use was a necessary test of the qualities of the jack." Likewise the following rule stated in Vol. 2 of Black on Rescission, § 546, p.1348, is applicable here: "The defense of laches, interposed to defeat the right to rescind the contract for fraud or other sufficient cause, should not be entertained unless it is made to appear that it would be inequitable to deny it, and while one seeking to rescind is ordinarily required to act with reasonable promptness, a liberal extension of this rule is allowable where the delay has not been willful nor exercised for an unfair purpose. Hence the cases generally agree that delay in taking steps to rescind a contract—even though so long-continued that otherwise it would amount to laches—will not prevent the granting of relief to the rescinding party where it is still possible to restore the other party to his former status, or where that status has not been changed, and where he has not been misled to his prejudice and will not be in any way injured by the rescission, and where no equities have intervened."

Plaintiff elected to rescind within a reasonable time after the sale. The delay was not willful nor exercised by the plaintiff for any unfair purpose. The delay was occasioned solely in the process of testing the animal

for its breeding qualities. Throughout the trial defendant testified the bull was of the kind and quality represented. Accordingly, he would not be harmed by a rescission of the sale.