Gaylen BENNETT, Plaintiff and Appellant,

v.

Tony JANSMA, d/b/a Jansma Cattle Co., Defendant and Appellee.

No. 13613.

Supreme Court of South Dakota.

Argued Sept. 8, 1982.

Decided Jan. 19, 1983.

C.E. Light of Light Law Offices, Yankton, for defendant and appellee.

MORGAN, Justice.

This appeal arises from a suit following the sale of cattle from appellee Tony Jansma, doing business as Jansma Cattle Company (Jansma), to appellant Gaylen Bennett (Bennett) through the Yankton Livestock Auction sales yard (Auction). The court sitting without a jury dismissed Bennett's complaint with prejudice and Bennett appeals. We affirm.

On December 7, 1979, Bennett attended the Auction and purchased 107 head of cattle in three lots. On December 8 the cattle were shipped to a commercial feeding operation in Nebraska. That evening personnel at the feeding operation notified Bennett that some of the cattle were sick, and on the following day, December 9, Bennett inspected the cattle. Approximately a week after the sale, Bennett informed the owner of the Auction, Larry Ryken (Auctioneer), of the sick cattle. Bennett identified the cattle as belonging to a lot of 55 and inquired as to the identity of the seller. Shortly thereafter, Ryken informed him that Jansma had sold the cattle. The cattle began to die and eventually 19 of the original 55 died. Bennett discussed this several times with Ryken but did not attempt to notify Jansma until April 23, 1980, when Bennett's attorney contacted Jansma by letter. Bennett brought suit on the theory that Jansma breached an implied warranty of merchantability.[1] The trial court entered judgment for Jansma.

Bennett appeals contending that these cattle breached the implied warranty of merchantability and that he notified Jansma of this breach of warranty within a reasonable time.

William J. Klimisch of Goetz, Hirsch & Klimisch, Yankton, for plaintiff and appellant.

---

1. We note that subsequent to our decision in *Pudwill v. Brown*, 294 N.W.2d 790 (S.D.1980), in which we held an implied warranty covered a latent defect in pigs, the legislature passed SDCL 57A–2–316.1 which provides: "Notwithstanding § 57A–2–316, there is no implied warranty on the sale of cattle, hogs, or sheep that such cattle, hogs, or sheep are free from disease." This provision became effective shortly after the present cause of action arose and eliminates future questions as to implied warranties arising from the sale of cattle, hogs and sheep.

The trial court's dismissal of the action operates as an adjudication upon the merits. SDCL 15–6–41(b). Since the dismissal operates as an adjudication upon the merits, this court on appeal reviews the findings of fact under the "clearly erroneous" standard. 5 Moore's Federal Practice § 41.13[4] at 41–196 to 198. We review the conclusions of law to determine whether they are in error as a matter of law.

Initially, we review whether an implied warranty of merchantability arises from the sale of these cattle. SDCL 57A–2–314(1) provides, in pertinent part, that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." This provision provides an implied warranty of merchantability for goods sold by a merchant.

A merchant is defined by SDCL 57A–2–104(1) as

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill perculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

We note that "courts which have considered whether or not a 'farmer' is or may be considered a 'merchant' under the above Uniform Commercial Code provisions are almost equally divided in their opinions." *Terminal Grain Corp. v. Freeman*, 270 N.W.2d 806, 811 (S.D.1978). In *Terminal Grain Corp., supra*, we held that a farmer with no particular knowledge or experience in dealing in future commodity transactions and who sold only the crops he raised to local elevators for cash or placed his grain in storage under a federal loan program, is not a merchant. In contrast, Jansma regularly deals in the buying ·and selling of cattle. Jansma also holds himself out as having knowledge or skill peculiar to cattle transactions and further, employed an intermediary, Auctioneer, "who by his occu-

pation holds himself out as having such knowledge or skill." SDCL 57A–2–104(1). Consequently, Jansma is a merchant and an implied warranty of merchantability arose from the sale of these cattle.

We next consider whether the condition of these cattle breached the implied warranty of merchantability. The trial court found as findings of fact that the cattle sold to Bennett became sick, that the cattle were sold as healthy cattle, and that the evidence was insufficient to establish that the cattle were sick at the time of purchase. Bennett, however, claims because these cattle became ill after their purchase that they had a latent illness and consequently these findings are clearly erroneous.

In *Pudwill v. Brown,* 294 N.W.2d 790 (S.D.1980), this court held that "[e]ven though the defect . . . in the pigs sold was not readily apparent to appellant when the pigs were initially delivered, this factor does not prevent the implied warranty of fitness for a particular purpose from being in effect." *Id.* at 792–93. *See Ver Steegh v. Flaugh,* 251 Iowa 1011, 103 N.W.2d 718 (1960); *Reed v. Bunger,* 255 Iowa 322, 122 N.W.2d 290 (1963). Bennett argues that the cattle could appear healthy and yet still have a latent illness and that such a latent illness would breach the implied warranty. The trial court, however, rejected this contention when it found "[t]hat there is insufficient evidence to support Plaintiff's claim that the cattle were sick at the time of purchase." As a finding of fact, this can only be reversed on a "clearly erroneous" standard, SDCL 15–6–52(a); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

However, we do not have to reach that issue because even assuming that we could find the trial court erred as to the health of the cattle, Bennett must show that he notified Jansma of the breach of warranty within a reasonable time and upon the record we hold he failed to do so.

SDCL 57A–2–607(3)(a) requires that "[t]he buyer must *within a reasonable time* after he discovers or should have dis-

covered any breach notify the seller of breach or be barred from any remedy[.]" (Emphasis added.) Bennett learned the cattle were sick on December 8, 1979, the day after he purchased them. Although he contacted Auctioneer approximately a week later, he did not notify Jansma until April 23, 1980, four and one-half months later. Bennett contends that Auctioneer was Jansma's agent and that contacting Auctioneer was sufficient notice to Jansma.[2]

Generally, an auctioneer is the agent of the person whose property he sells. 7 Am. Jur.2d *Auctions* § 55 (1980). The authority of an auctioneer, however, is limited. An auctioneer's authority commences prior to sale and ends when the sale is completed. Reuschlein & Gregory, *Agency and Partnership* § 18 (1979); 7 Am.Jur.2d *Auctions* § 58 (1980). In the present case, although Auctioneer was an agent of Jansma whose cattle he sold to Bennett, his authority commenced prior to the sale and ended when the sale was completed.

Moreover, SDCL 59–8–1 specifically addresses the authority of an auctioneer. That statute provides, in pertinent part:

An auctioneer in the absence of special authorization or usage to the contrary, has authority from the seller, only as follows:

(1) To sell by public auction to the highest bidder;

(2) To sell for cash only . . . ;

(3) To warrant in like manner with other agents to sell, the title, quality, and quantity of personal property;

(4) To prescribe reasonable rules and terms of sale;

(5) To deliver the thing sold . . . ;

(6) To collect the price; and

(7) To do whatever else is necessary, or proper and usual, in the ordinary course of business, for effecting these purposes.

Accordingly, the authority of an auctioneer is limited to selling, warranting, and delivering the article sold and collecting the price. An exception to this limited authority is special authorization or usage.[3] These are factual questions, SDCL 57A–1–205(2), however, and Bennett offered no evidence at trial to prove these exceptions. Consequently, we apply the general rule that the authority of an auctioneer as agent terminates when the sale is completed.[4] Reuschlein & Gregory, *Agency and Partnership* § 18 (1979); 7 Am.Jur.2d *Auctions* § 58 (1980).

■ Since Bennett's contact with Auctioneer is not at issue here, the notice we must examine is Bennett's letter of April 23, 1980, to determine whether it was notice within a reasonable time. SDCL 57A–1–204(2) states that "[w]hat is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." The purpose of notice under Uniform Commercial Code § 2–607 (adopted in

2. Bennett's contention is based upon SDCL 59–6–5 which states: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, communicate to the other."

3. SDCL 57A–1–205(2) states, in pertinent part, that "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts."

4. In *Rapid City Pro. Cr. Ass'n v. Transamerica Ins. Co.*, 85 S.D. 395, 184 N.W.2d 49 (1971), we discussed the role of an auctioneer in the sale of mortgaged cattle. There the auctioneer carried an open account on its books against

the owner of the cattle and made advances of money to him. When contacted by the credit association holding the mortgage on the cattle, the auctioneer deliberately concealed sales made by that owner and falsified records. As we noted in that opinion, the auctioneer and the cattle owner "had many 'dealings together'," 85 S.D. at 400, 184 N.W.2d at 52, and we held the auctioneer liable of conversion for selling the mortgaged cattle. In contrast, here there are no allegations or indications from the record that fraud was involved. Further, there is no evidence of an open account nor of a close continuous financial intertwining between Auctioneer and Jansma. We also note that principles of agency and partnership were not discussed in *Rapid City, supra.* Since these cases are distinguishable, *Rapid City* does not control the disposition of this case.

South Dakota as SDCL 57A–2–607) is to open the way for settlement through negotiation between the parties. U.C.C. § 2–607, Comment 4. According to the California Supreme Court, "the sound commercial rule" codified in section 2–607 also requires that a seller be reasonably protected against stale claims arising out of transactions which a buyer has led him to believe were closed. *Pollard v. Saxe & Yolles Dev. Co.,* 12 Cal.3d 374, 115 Cal.Rptr. 648, 525 P.2d 88 (1974). "Early warning permits the seller to investigate the claim while the facts are fresh, avoid the defect in the future, minimize his damages, or perhaps assert a timely claim of his own against third parties." *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 972 (5th Cir.1976) (citations omitted).

Bennett's letter of April 23, 1980, was over four and one-half months after the date of the sale. By this time, the cattle's illness had passed; the cattle had been treated and either died or recovered. There was nothing left for Jansma to investigate except for Bennett's records. Jansma had purchased these cattle only two days prior to selling them to Bennett. If Bennett had promptly notified Jansma within a reasonable time, Jansma would have had an opportunity to investigate the claim while it was fresh or to minimize possible damages. We hold that giving notice of breach four and one-half months after the sale under these circumstances is not within a reasonable time.

Consequently, regardless of whether the condition of these cattle breached the implied warranty, Bennett did not give Jansma notice of the breach within reasonable time. Since Bennett failed to comply with the requirements of SDCL 57A–2–607(3) to provide reasonable notice, he is barred from recovery.

We affirm.

All the Justices concur.