**HORIZONS, INC.,**
**Appellee/Cross-Appellant,**

v.

**AVCO CORPORATION,**
**Appellant/Cross-Appellee.**

**Nos. 82–2270 and 82–2309.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1983.

Decided Aug. 23, 1983.

John M. Kilroy, Sr., Dennis D. Palmer, William E. Quirk, of Shughart, Thomson & Kilroy, Kansas City, Mo., for Avco Corp.

Wayne F. Gilbert, of Gunderson, Farrar, Aldrich & DeMersseman, Rapid City, S.D., for Horizons, Inc.

Before ROSS and ARNOLD, Circuit Judges, and SCHATZ,* District Judge.

ROSS, Circuit Judge.

This diversity action was instituted by Horizons, Inc. alleging a breach of express and implied warranties of fitness for an ordinary purpose and fitness for a particular purpose in connection with the purchase by Horizons of an airplane engine which was remanufactured by Avco Corporation. Horizons claimed that it suffered ordinary, incidental and consequential damages as a result of backfiring which occurred in the engine shortly after installation. Following a bench trial, the district court, 551 F.Supp. 771,[1] found that Avco had breached an implied warranty of merchantability and awarded Horizons $9,974.37 in general damages, $619.84 in incidental damages, and $56,265.00 in consequential damages. Horizons cross-appeals alleging that the failure to award damages for the cost of "cover" was error.

Horizons is a South Dakota corporation in the business of providing aerial photographic and photogrammetric services, including topographic surveying and mapping. Avco does not sell its remanufactured engines directly to the public, but does so only through its authorized domestic distributors. Aviation Sales, Inc. of Denver, Colorado, is an authorized distributor of Avco engines. James Spell, president of Horizons, contacted Aviation Sales and discussed the possibility of purchasing an Avco remanufactured engine for one of its company airplanes. Aviation Sales advised Spell that Horizons would be better off to order the engine through an Avco "fixed base operator," such as Casper Air Service, a dealer located in Casper, Wyoming. In December of 1977, Horizons ordered an Avco engine from Casper Air Service for a price of $12,767.00.

Robert Collett, Horizons' pilot, installed the engine in a Cessna 310 aircraft owned by Horizons about mid-June of 1978. After the engine was installed and ground-tested, Horizons' personnel attempted to operate the aircraft. A series of mechanical failures and breakdowns occurred primarily because of backfiring in the engine. Horizons notified Avco, in writing, of the engine malfunctions. In order to correct the backfiring problems, Horizons incurred numerous expenses and ultimately had to overhaul the engine. The district court found that expert testimony established that there was a defect in the valve train which existed at the time the engine was remanufactured and was not caused by normal engine wear.

The district court held that an award of consequential damages was proper because Aviation Sales was the ostensible agent of Avco who had "reason to know" of the requirements of Horizons' business and the knowledge of an agent is imputed to the principal under South Dakota law. The district court found that in 1977 and 1978, Horizons had sufficient contract work available to occupy the aircraft on every available flight day. Horizons lost eleven flight days (57.7 hours) in 1978 due to the defective condition of the Avco engine. The court found that consequently, Horizons was unable to complete its 1978 contracts and was forced to utilize flight days in late 1978, 1979 and 1980 to complete those contracts. The court held that the evidence at trial established, to a reasonable degree of certainty, that had Horizons been able to complete flights on those days it would have received net earnings of $56,265.00, which was then awarded as consequential damages for the "down time" experienced by the aircraft during repair of the defective valve train.

On appeal, Avco contends that the district court erred in its award of consequential damages and also in its computation of the proper amount of consequential dam-

---

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota.

ages.[2] Horizons, as cross-appellant, contends that the district court erred in failing to award damages for the cost of "cover." We find that the district court correctly awarded consequential damages but failed to award the proper amount of such damages. We also find that the district court correctly denied an award of damages for the cost of "cover." We accordingly affirm in part and reverse in part.

The district court based its determination that an award of consequential damages was proper in this case upon S.D. Codified Laws Ann. § 57A–2–715(2)(a),[3] providing as follows:

(2) Consequential damages resulting from the seller's breach include

(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

Avco alleges that the district court erred when it found that Avco had "reason to know" of Horizons' requirements. Avco traced the reasoning of the district court as finding: (1) that Horizons communicated its requirements to Aviation Sales; (2) Aviation Sales was the ostensible agent[4] of Avco; and (3) that knowledge of Horizons' requirements are imputed to Avco, the principal, under South Dakota law, thereby giving Avco "reason to know" as required under the statute. Avco argues that each of the three steps in the district court's reasoning is flawed and allowed an erroneous award of consequential damages. We disagree.

Avco contends that the first step of the court's analysis is erroneous because Horizons never put on evidence that it actually communicated its requirements to anyone at Aviation Sales. Avco alleges that the district court should not have relied on the fact that Horizons' president, James Spell, habitually explained the nature of Horizons' business to people that he spoke to on the telephone. Avco argues that such testimony does not establish that Spell actually told Aviation Sales of its business requirements. We conclude that the district court's finding that Avco had knowledge of Horizons' requirements is not clearly erroneous under Fed.R.Civ.P. 52(a). The record in this case fully supports the court's finding and demonstrates that, at every level of the transaction, knowledge of Horizons' business use of its airplane engines was either communicated to or previously known by Avco. We find three instances of communication to Avco of Horizons' requirements. First, Avco sent mailings to Horizons' business address which identified Horizons as an aerial photographer. Second, it is doubtful that James Spell departed from his habit of identifying himself and his company's line of work when he talked to Aviation Sales about purchasing the engine. Third, Casper Air Service, the Avco dealer which sold the engine to Horizons, had previously modified Horizons' plane for aerial photography. Thus, it is clear that Avco knew, both directly from its own mailing list and indirectly through its distributors, of Horizons' business requirements.

In *Lewis v. Mobil Oil Corporation*, 438 F.2d 500, 510–11 (8th Cir.1971) we held that

[w]here a seller provides goods to a manufacturing enterprise with knowledge that they are to be used in the manufacturing process, it is reasonable to assume that he should know that defective goods will cause a disruption of production, and loss of profits is a natural consequence of such disruption. Hence, loss of profits

2. Avco also alleges on appeal that the district court erred in finding a breach of warranty. However, we find no merit in this allegation and do not feel a discussion of this issue is required.

3. The statutory provision quoted is taken from section 2–715(2) of the Uniform Commercial Code.

4. Agency is ostensible when by conduct or want of ordinary care the principal causes a third person to believe another, who is not actually appointed, to be his agent. S.D. Codified Laws Ann. § 59–1–5.

should be recoverable under those circumstances.

We find the analysis in *Lewis* controlling in this case. Avco provided Horizons, a company it knew through its own mailing list to be an aerial photographer, with a remanufactured engine to be used in its photograph business. It is now unreasonable for Avco to contend that it was unaware that a defective engine could disrupt Horizons' photograph business and cause a loss of profits.

Since we have previously held that Avco had "reason to know" of Horizons' requirements because of Horizons' presence on Avco's own mailing list, we deem it unnecessary to reach the district court's findings that Aviation Sales was the ostensible agent of Avco and its knowledge is thereby imputed to Avco.

The district court awarded Horizons $56,265.00 in consequential damages as compensation for the value of productive capacity lost during the engine's down time. Horizons calculated its lost production claim by utilizing a formula approved in *Clark v. International Harvester Co.*, 581 P.2d 784, 805 (Idaho 1978). To arrive at the total claim amount of $56,265.00, Horizons multiplied the contract payment rate per square mile times the number of square miles the aircraft could have covered with the engine functioning properly and subtracted from that figure the operation costs of the plane and the cost of materials. Horizons did not deduct the overhead expense of maintaining the film processing personnel as it felt that this was a cost incurred by Horizons without the benefit of income to meet the expenses during the down time. Although Horizons was ultimately paid the full contract price for both of its contracts which had to be completed at a later date due to the engine's down time, the district court found that 57.7 hours of productive time lost can never be recovered in a company which has sufficient work to keep busy on every available flight day. The district court viewed this loss as similar to the loss suffered by a volume seller: even though the goods are later purchased by another, the supply is endless and a loss of profits has still occurred. We agree with the district court that a loss of profits has occurred. However, we disagree with the amount of consequential damages suffered by Horizons.

In general, expected profits of a commercial business are too remote, speculative and uncertain to permit a recovery of damages for their loss. *Cargill, Inc. v. Taylor Towing Service, Inc.*, 642 F.2d 239, 241 (8th Cir.1981). Proof of lost profits must be sufficient to remove the question of profits from the realm of speculation and conjecture. *Rogers v. Allis-Chalmers Credit Corp.*, 679 F.2d 138, 142 (8th Cir.1982). The burden of proving the extent of loss incurred by way of consequential damage is on the plaintiff but mathematical precision is not required, only that the loss can be shown in a manner reasonable under the circumstances. *Karlen v. Butler Mfg. Co.*, 526 F.2d 1373, 1380 (8th Cir.1975). The sufficiency of the evidence of lost profits is dependent upon whether the financial information contained in the record is such that a just or reasonable estimate can be drawn. *Cargill, supra*, 642 F.2d at 241. The law in South Dakota concerning recovery of lost profits mirrors the position taken by the Eighth Circuit. *See Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977); *Olson v. Aldren*, 84 S.D. 292, 170 N.W.2d 891 (1969).

In reviewing the consequential damage award, we are convinced that the amount of loss suffered by Horizons was not calculated in a manner reasonable under the circumstances. However, because of the quality of the financial information contained in the record, we feel that a just and reasonable estimate can be drawn by adopting reasonable accounting procedures on gross receipts and expenses for the year of 1978.

Trial Exhibit 67 discloses that in 1978 Horizons' gross receipts amounted to $402,239.12, while expenses amounted to $348,792.00. This results in a net profit of $53,447.12 for the year of 1978. This figure includes payment in full on the two con-

tracts which had to be completed at a later date due to the defective engine. Thus, it seems grossly excessive to award Horizons` $56,265.00 for 57.7 hours of lost flying time when they only made $53,447.12 for a total of 855.05 hours of flying time in 1978. We find that the most reasonable method of calculating Horizons' loss of profits is to employ a rate of average hourly profit. In 1978 Horizons flew 855.05 hours and made a net profit of $53,447.12. Thus, Horizons' 1978 average hourly profit was $62.51. In multiplying the average hourly profit and the 57.7 hours of down time, we find that the amount of Horizons' loss of profits is $3,606.83. Although this is a far cry from the original award of $56,265.00, we find it quite reasonable considering that the two contracts which had to be completed at a later date were not completely profitable ventures for Horizons. In sum, we hold that Horizons is entitled to $3,606.83 in consequential damages.

 On cross-appeal, Horizons contends that the district court erred in failing to award damages for the cost of "cover" incurred when Horizons purchased substitute engines to use during the period of down time. The district court held that Horizons could not recover its claim for the cost of "cover" as Horizons had never rejected or revoked its acceptance of the Avco engine. We agree.

S.D. Codified Laws Ann. § 57A–2–711(1)(a) provides that:

(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (§ 57A–2–612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

(a) "Cover" and have damages under § 57A–2–712 as to all the goods affected whether or not they have been identified to the contract;  or

Thus, the district court was correct in finding that Horizons was not entitled to damages for the cost of "cover."

In summary, we affirm the district court's decision to award consequential damages and deny the claim for the cost of "cover." However, we reverse the amount of the consequential damage award and order that the total damage award be reduced to $14,201.04.