Adolph HEPPER, Lavern Hepper, and
Ward Hepper, Plaintiffs and
Appellees,

v.

TRIPLE U ENTERPRISES, INC., A Cor-
poration; L.R. Houck, and Jerry
Houck, Defendants and Appellants.

Nos. 14287, 14290 and 14391.

Supreme Court of South Dakota.

Argued Feb. 10, 1986.

Decided May 28, 1986.

Kennith L. Gosch of Bantz, Gosch, Cremer & Peterson, Aberdeen, Ronald R. Johnson of Johnson & Kelley, Lemmon, for plaintiffs and appellees.

Joseph M. Butler, Mark F. Marshall, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants.

FOSHEIM, Chief Justice.

Plaintiffs Adolph, Lavern, and Ward Hepper (Heppers) were awarded $286,232 [1] for breach of warranty on contracts for the purchase of buffalo. Defendant Triple U Enterprises, Inc., (Triple U) appeals. We reverse and remand.

In the fall of 1978, Heppers visited Triple U, a buffalo ranch operated by the Houck family. Heppers were shown the Triple U herd and buffalo raising was discussed. Houcks told the Heppers that buffalo were hardy animals and relatively disease free and that an eighty to ninety percent calf crop was obtained from their herd. In September, Heppers purchased 100 three-year-old heifers, 266 two-year-old heifers, and 34 two-year-old bulls. Houcks knew the animals were purchased for breeding. Heppers knew that the animals were not vaccinated or tested for brucellosis but argued that Houcks warranted that buffalo do not get that disease. Delivery of these 400 head was made in October, 1978, to the Ward Hepper ranch.

When Ward Hepper noted abortions with the buffalo cows, he had blood and tissue tested in February of 1979 from a cow that had aborted a calf. The blood sample indicated that the cow was a brucellosis "reactor." The tissue sample from the cow's retained placenta did not culture a positive reaction. Upon receipt of these results, Heppers' local veterinarian recommended that the entire herd be tested. Heppers did not follow that advice.

Heppers, nevertheless, purchased another lot of buffalo from Triple U in March of 1979. Despite Roy Houck's contention that it was unnecessary, Adolph Hepper vaccinated these 250 head for brucellosis prior to shipment. This lot was pastured at Adolph's ranch, separate from the 400 buffalo earlier purchased.

Prior to the 1980 calving season, the number of abortions increased. The entire herd at Ward Hepper's ranch was tested in March, 1980, for brucellosis. Seventy-eight percent reacted positive. When informed of the problem, Triple U offered to take back the animals less the 1979 calves. Heppers declined this offer since a new calf crop was imminent.

On June 12, 1980, Heppers brought suit for extensive damages against Triple U. Jerry and Roy Houck were added as individual defendants in October, 1980. Heppers alleged breach of warranty and fraudulent misrepresentation.

---

1. The judgment was offset by $201,947.34, the amount due Triple U on the contracts, which resulted in a balance due Heppers of $84,284.66.

Prior to trial in May of 1983, the court ordered summary judgment for Triple U on its counterclaim for the amount due on the sale contracts. Neither the contract rate of interest nor prejudgment interest was awarded.

At trial, Heppers presented testimony on the value of buffalo sold by Custer State Park, the value of slaughter versus breeding buffalo, and an expected calving rate of eighty to ninety percent. The core of the damage claim on Ward Hepper's herd focused on Ward's decision to slaughter the entire cow herd and sell meat products over a three-year period.[2] Adolph Hepper sought damages for the test and slaughter program he instigated to eradicate brucellosis from the herd at his ranch. Both sought compensation for diminished calf crops in 1979, 1980, 1981, and 1982, together with consequential and incidental damages.

The jury returned a verdict against Triple U for breach of warranty and awarded substantial damages. Roy and Jerry Houck were specifically found not liable as individuals for deceitful misrepresentation.

## I.

The thrust of Triple U's appeal is that the trial court abused its discretion in failing to order a new trial on the grounds that evidence was insufficient to support the verdict and that the trial court erroneously admitted speculative and conjectural evidence of calf crop losses. We agree. Several specific evidentiary problems, gleaned from the record and discussed below, identify the necessity for a new trial.

2. Animals which react positive to a brucellosis test can be slaughtered and the meat sold for human consumption.

3. Notice may be inadequate as a matter of law. *See, e.g., Bennett v. Jansma,* 329 N.W.2d 134, 138 (S.D.1983). However, we decline to so rule on the record here. While insufficient evidence of the notice is clearly an aspect of Triple U's argument that the trial court erred in denying a new trial, insufficient notice *as a matter of law* was not specifically presented to the trial court nor briefed and argued for this court. Consequently, it is not preserved on appeal. *Mortweet*

*Notice.*

Under SDCL § 57A-2-607(3), a buyer who accepts goods must notify the seller of any breach within a reasonable time after he discovers *or should have discovered* the breach or be barred from any remedy. (Emphasis added.) Notice is an element that must be specifically proven; it is not an affirmative defense.[3] *Eastern Air Lines, Inc. v. McDonnell Douglas, Corp.,* 532 F.2d 957, 970 (5th Cir.1976); *see also Vander Eyk v. Bones,* 77 S.D. 345, 352, 91 N.W.2d 897, 901 (1958). The law of this case[4] is even more strict than SDCL § 57A-2-607(3), however, because Heppers were required to show not only that timely notice informed Triple U of the breach but also that Heppers intended to look to them for damages.

By statute, "reasonable time" depends on the nature, purpose and circumstances of the action. SDCL § 57A-1-204(2). The jury was adequately instructed to consider the "circumstances and the kind of product involved" under Instruction No. 17.

The purpose of requiring notice within a reasonable time is to give the seller sufficient time to investigate the breach of warranty claim while facts are still fresh. *Vander Eyk,* 77 S.D. at 354, 91 N.W.2d at 901–02. Timely notice also fosters settlement through negotiation, permits a seller to avoid future defects, allows a seller to minimize damages, and protects a seller from stale claims. *Bennett v. Jansma,* 329 N.W.2d 134, 137–38 (S.D.1983); *Eastern Air Lines, Inc.,* 532 F.2d at 972; *see also White v. Mississippi Order Buyers, Inc.,* 648 P.2d 682, 684 (Colo.App.1982).

*v. Eliason,* 335 N.W.2d 812, 813 (S.D.1983); *Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D.1981).

4. Neither party objects to Instruction No. 17 which states that notice "merely must inform the seller of the alleged breach of warranty *and* the buyer's intention to look to him for damages." This court has interpreted SDCL § 57A-2-607(3) to mean that notice must merely inform the seller that the transaction is troublesome and must be watched. *Carlson v. Rysavy,* 262 N.W.2d 27, 30 (S.D.1978).

■ Under the law of this case and in light of all circumstances, we are unable to conclude that evidence was sufficient to permit a supportable conclusion that notice of breach pursuant to either sale was reasonable. A review of the record, in a light favorable to the verdict,[5] reveals that the earliest time at which Triple U was informed of the alleged breach [6] of warranty *and* of Heppers' intention to look to them for damages on the first sale was in the late winter of 1980 following testing. Since Triple U offered to take back the cows, the jury could reasonably infer that Triple U knew Heppers expected compensation. Accordingly, the evidence indicates that notice of the first breach was given, at the earliest, over one year after that sale and one year after Heppers knew or should have known that brucellosis was in the herd.

This is not the first time this court has been called to review the reasonableness of notice or the timeliness of revoked acceptance in breach of warranty cases involving livestock sales. In *Vander Eyk v. Bones,* 77 S.D. 345, 91 N.W.2d 897 (1958), we held one breeding season gave the purchaser of a bull ample time to discover that the bull was not breeding cows and give timely notice. In contrast, we held acceptance of newly purchased feeder pigs was properly revoked when the disease and its effects became apparent. *Pudwill v. Brown,* 294 N.W.2d 790 (S.D.1980). Most recently, in *Bennett v. Jansma,* 329 N.W.2d 134 (S.D. 1983), we ruled that notice of breach of warranty on the purchase of cattle was not timely when given four and one-half months after the sick animals were delivered to the purchaser.

The evidence presented simply does not support a conclusion that the belated notice was given within a reasonable time. *See Bennett,* 329 N.W.2d at 136–37. Had Heppers prudently abided by their veterinarian's recommendation to test the herd when the disease was first diagnosed in February or April of 1979,[7] approximately six months after the first sign of an aborted calf, damages could have been more readily ascertained by establishing the prevalence of the disease at the time of delivery. Thus, the objectives of notice, to minimize damages and protect a seller from stale claims, could have been more timely fostered. In contrast, Heppers not only disregarded their own expert's advice but proceeded, undaunted, with the purchase of a second herd from Triple U and, despite continued problems, did not test the first herd until a year later, March of 1980, after the highly contagious disease was allowed to infect other buffalo. Heppers, moreover, exhibited apprehension and precaution by having the second lot vaccinated before shipment. This shows they did further business with their eyes open.

■ Timely notice to Triple U of breach of warranty on the second sale is even more tenuous. Adolph Hepper did no significant testing of the second cow herd until April, 1981, although he had noticed abortions during the previous calving season. Also, when the 1980 calf crop was tested in mid 1981, only 22 of 284 reacted positive.[8]

At no time prior to initiation of this suit [9] can we find from the record when, if ever, Heppers informed Triple U of breach of warranty on the sale of the second herd and of their intent to look to Triple U for

---

5. We must review the evidence and all reasonable inferences in a light most favorable to support the verdict. *Farmers State Bank v. Westrum,* 341 N.W.2d 631, 634 (S.D.1983).

6. Jerry Houck concedes he first learned of a possible problem with brucellosis in the Ward Hepper herd in February of 1979.

7. Heppers' veterinarian, Dr. Monfore, testified that he advised Heppers to test the whole herd located at Ward's ranch in February, 1979.

8. The disjointed examination and cross-examinations of witnesses and complex test result exhibits exacerbate the speculative nature of the damages awarded.

9. The wheels of this law suit began to turn on April 16, 1980, when Heppers' lawyer informed Triple U of the alleged breaches and requested rescission of the contracts and damages. A summons and complaint was served in late May, 1980.

damages. Discussion with Houcks prior to March of 1980 appear to have focused on problems in Ward's herd. Moreover, these conversations apparently did not include discussion of expected damages.

Notice of breach by summons and complaint is obviously insufficient since it clearly frustrates the purposes of timely notice, discussed above. *Armco Steel Corp. v. Isaacson Structural Steel Co.,* 611 P.2d 507, 512 (Alaska 1980). Accordingly, Heppers are barred as a matter of law from recovery on the second purchase if they are unable to establish more timely notice. SDCL § 57A-2-607(3); *see also Bennett,* 329 N.W.2d at 136-38.

*Proof of Damages.*

Under South Dakota's commercial code, a buyer who has accepted goods and given proper notice may recover damages for "any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." SDCL § 57A-2-714(1). "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." SDCL § 57A-2-714(2); *see also Horizons, Inc. v. Avco Corp.,* 551 F.Supp. 771, 780 (D.S.D.1982).

Incidental and consequential damages may also be recovered when appropriate. SDCL § 57A-2-714(3). Incidental damages for retained goods may include any reasonable expenses incident to the breach. SDCL § 57A-2-715(1). Care, custody, and transportation of defective goods have been recognized as incidental damages. *See Horizons, Inc.,* 551 F.Supp. at 780-81. Consequential damages include: "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover[10] or otherwise; and

[i]njury to person or property proximately resulting from any breach of warranty." SDCL § 57A-2-715(2). Lost profits have been recognized, including crop losses. *See, e.g., Swenson v. Chevron Chemical Co.,* 89 S.D. 497, 234 N.W.2d 38, 43-44 (1975); *Olson v. Aldren,* 84 S.D. 292, 298-300, 170 N.W.2d 891, 895 (1969). Mathematical precision is not required but loss must be shown in a manner reasonable under the circumstances. *Horizons, Inc. v. Avco Corp.,* 714 F.2d 862, 866 (8th Cir. 1983); *Rozeboom v. Northwestern Bell Telephone Co.,* 358 N.W.2d 241, 247 (S.D. 1984).

Finally, an aggrieved buyer is entitled to be put in as good a position as if the seller had fully performed but no more. SDCL § 57A-1-106; *Regan v. Moyle Petroleum Co.,* 344 N.W.2d 695, 696-97 (S.D.1984). While remedies provided under the commercial code are to be liberally construed, we must insure that the law is fairly applied. *Id.*

■ The jury was instructed to consider the following elements of detriment or damage proved by the evidence to have resulted from the acts of Triple U and the Houcks:

(1) The difference, at the time and place of acceptance, between the value of the goods accepted and the value they would have had if they had been as warranted.

(2) The loss of any calf crop that was the proximate result of the breach of any warranty of the defendants.

(3) Any expenses for veterinary services and medicines that were the proximate result from the breach of any warranty of the defendants.

(4) Any costs for extra feed and care of the animals that were the proximate result of the breach of any warranty of the defendants.

(5) Any costs for disinfecting in an effort to eradicate the disease and the prem-

---

**10.** "Cover" costs are not recoverable where the buyer has accepted the goods and never revoked acceptance. *Horizons, Inc. v. Avco Corp.,* 714 F.2d 862, 866 (8th Cir.1983).

ises wherein the diseased animals were kept that were the proximate result of the breach of any warranty of the defendants.

(6) Any direct injury to the business of the plaintiff that proximately resulted from the breach of any warranty of the defendants.

Courts Instruction No. 22 (in pertinent part).

Initially, we find there was no evidence of costs for disinfecting the premises or of direct injury to Heppers' business. Consequently, the trial court clearly erred in submitting those elements to the jury for consideration. *Orrison v. City of Rapid City*, 76 S.D. 145, 156, 74 N.W.2d 489, 495 (1956); *see also Atyeo v. Paulsen*, 319 N.W.2d 164, 165 (S.D.1982).

Elements (1) and (2) present the greatest problem. While each stated a reasonable measure of damages which may have resulted from Triple U's breach, evidence of these elements is speculative. There is no showing how many cows were diseased, or at least more probable than not were diseased, at the time of acceptance. *See Mitchell v. Arab Stockyards, Inc.*, 416 So.2d 994, 999 (Ala.1982). Moreover, there is no expert testimony which would guide the jury in interpreting from the test results how many buffalo were infected at the time of purchase. Absent that information, we cannot discern how reasonable damages could be established since delivery of buffalo unfit for breeding was the act of breach and it is from that act that damages must arise.

Finally, we find no legal or factual basis to support an award for calf crop losses after the first calving season following purchase. We must look to, inter alia, potential prejudice to Triple U from defending a protracted complaint. *Vander Eyk*, 77 S.D. at 354–55, 91 N.W.2d at 901–02. While lost profits may be recovered, Heppers' evidence must show with reasonable certainty both the occurrence and the extent of the loss of profits. *Atyeo*, 319 N.W.2d at 166; *Horizons, Inc.*, 551 F.Supp. at 781. Difficulty in establishing and prov-

ing damages does not relieve the trial court of insuring that a reasonable method or basis for determining litigants' rights has been fashioned. *State Highway Commission v. Foye*, 87 S.D. 206, 209, 205 N.W.2d 100, 101 (1973). The trial court can also look to Triple U for aid since Triple U has the burden of showing that damages would have been lessened by the exercise of reasonable diligence on the part of Heppers. *Renner Elevator Co. v. Schuer*, 267 N.W.2d 204, 207 (S.D.1978). Moreover, it may be within the trial court's discretion to establish, as a matter of law, when Heppers' duty to mitigate eliminates further calf crop loss claims. *See, e.g., Northern Farm Supply, Inc. v. Sprecher*, 307 N.W.2d 870, 874 (S.D.1981); *see also Fullerton Lumber Co. v. Reindl*, 331 N.W.2d 293, 296 (S.D.1983).

We must conclude that the jury was presented with insufficient evidence to establish reasonable damages. While the jury could make reasonable inferences from the facts that were presented, manifest error occurred due to the absence of an established evidentiary basis of damages. *Martineau v. Walker*, 97 Idaho 246, 542 P.2d 1165, 1168 (1975); *see also Walling Chemical Co. v. Bigner*, 349 N.W.2d 647, 651–52 (S.D.1984).

*Disposition*

Under SDCL § 15–6–59(a)(6), a verdict may and should be set aside when the jury draws from conflicting evidence inferences that reason cannot support in light of other evidentiary facts proven or when it is against the law. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D.1980); *Cargill, Inc. v. Elliott Farms, Inc.*, 363 N.W.2d 212 (S.D. 1985). The trial court has broad discretionary power in granting or denying a motion for a new trial and, generally, that order will not be disturbed absent a clear showing of abuse of discretion. *Lewis*, 290 N.W.2d at 497; *Walling Chemical Co.*, 349 N.W.2d at 650–51. However, if an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. *Simmons v. City of Sioux Falls*, 374 N.W.2d

631, 632 (S.D.1985) (citing *Mueller v. Mueller*, 88 S.D. 446, 221 N.W.2d 39 (1974)).

Here, we must conclude that the trial court clearly abused its discretion in denying a motion for new trial. Not only did Heppers fail to prove adequate notice relative to breach of warranty on each sale, the evidence presented to establish damages is speculative and not directed to restoring Heppers to as good a position as if Triple U had fully performed on the contracts. Accordingly, we remand. Should Heppers be unable to establish on retrial timely notice of breach relative to each sale, their causes of action are subject to dismissal as a matter of law. *See Bennett*, 329 N.W.2d at 136–38.

## II.

Prior to trial on Heppers' breach of warranty claim, the trial court awarded summary judgment for Triple U on their counterclaim against Heppers for the sums due on the sale contracts. This amount was to be offset by any damage award to Heppers. Triple U argues the trial court erred in failing to award them the full amount due, including interest provided under the contract.

■ Under SDCL § 57A–2–607(1), Heppers must pay the contract rate for the buffalo accepted. Contract rate includes interest provided under the contract. Consequently, Triple U is entitled to all sums due under the sale contracts.

■ However, the trial court did not err in denying prejudgment interest. Under SDCL § 21–1–11, the prevailing party is entitled to prejudgment interest only on certain damages. *Subsurfco, Inc. v. B–Y Water District*, 369 N.W.2d 129, 131 (S.D. 1985). The trial court ordered the sums due Triple U to be offset by any damages due Heppers. Consequently, Triple U's damages arising from Heppers' breach of contract were not certain or capable of being made certain until the jury returned its verdict. Therefore, prejudgment interest on the judgment was properly denied. *See also Cargill, Inc. v. Elliott Farms,*

*Inc.,* 363 N.W.2d 212 (S.D.1985); *Barton Masonry, Inc. v. Varilek,* 375 N.W.2d 200, 202 (S.D.1985) (*see* cases cited therein).

## III.

Heppers were awarded certain costs by the trial court. Triple U argues that costs recovered for one of Heppers' expert witnesses, Dr. Kirkebride, exceeded amounts permitted by statute. We agree.

■ The issue has been sufficiently preserved on appeal. While not legally precise, Triple U made an overall objection to the trial court on expert witness costs but received only a partial reduction. Upon appeal, they now urge further reduction of costs allowed for Dr. Kirkebride.

■ Only those costs permitted by statute may be awarded. *Arcon Construction Co. v. South Dakota Cement Plant,* 349 N.W.2d 407, 415–16 (S.D.1984). While costs may include fees for expert witnesses, SDCL § 15–17–4, that cost item, by statute, cannot exceed the daily witness fee established by SDCL § 19–5–1. *Id.* The trial court erred in taxing meals and living expenses as allowable costs.

Upon remand, costs should be awarded to the prevailing party in accordance with applicable law.

## IV.

■ The trial court submitted a deceitful misrepresentation claim to the jury against Jerry Houck and Roy Houck but not against Triple U Enterprises. By Notice of Review, Appellee-Heppers claim this was error. We disagree.

The jury specifically found neither Jerry nor Roy Houck liable as individuals for deceitful misrepresentation. Heppers have identified no additional evidence, not already presented against the Houcks as individuals, that would establish misrepresentation by the corporation as a separate entity. Therefore, we are unable to find prejudicial error. *See Ryken v. Blumer,* 307 N.W.2d 865, 868–69 (S.D.1981); *Frazier v. Norton,* 334 N.W.2d 865, 869 (S.D. 1983).

Reversed and remanded.

MORGAN, HENDERSON and WUEST, JJ., and HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.